**GILBERT FAMILY PARTNERSHIP, a Michigan partnership, Alice Gilbert, Gwen Greenblatt, Greg Greenblatt, and Dean Greenblatt, Plaintiffs,**

v.

**NIDO CORPORATION, an Illinois corporation, Goose Creek Oil Company, Inc., an Illinois corporation, Fox and Company, a partnership, Alexander Grant & Company, a partnership, Grant Thornton, a partnership, Robert D. Holsapple, Diane Holsapple, Steven Holsapple, and Brian Holsapple, jointly and severally, Defendants.**

No. 86–CV–72781–DT.

United States District Court, E.D. Michigan, S.D.

Feb. 9, 1988.

Michael G. Vartinian, Robert S. Krause, William T. Burgess, Detroit, Mich., for plaintiffs.

Patrick M. Barrett, Detroit, Mich. for Nido Corp., Fox and Co., Alexander Grant & Co. and Grant Thornton.

Robert D. Holsapple, Diane Holsapple, Steven Holsapple, Brian Holsapple and Goose Creek Oil Co., pro se.

## MEMORANDUM OPINION AND ORDER

JULIAN ABELE COOK, Jr., District Judge.

In 1980 and 1981, the Plaintiffs, Alice Gilbert and her children ("Plaintiffs"), made certain investments in oil and natural gas ventures in Illinois [1] through Defendants, Goose Creek Oil Company and its officers, Robert and Diane Holsapple.[2]

---

**1.** The Plaintiffs invested in certain leases of real property which ostensibly contained oil and natural gas reserves. *See* Complaint at 4–22, paragraphs 9–45 ("Common Allegations").

The following are the undisputed names, dates and amounts of the investments that were made through Goose Creek by the Plaintiffs:

a. Benoist Lease; March 10 and March 21, 1980; $220,000.
b. Benoist Lease; September, 1980; $35,000.
c. Robinson Lease; March 10, 1980; $36,666.67.
d. Benoist Community Lease; February 13, 1981; $30,000.
e. Benoist Community Lease; April, 1981; $46,667.
f. Borowiak Lease; June 9, 1980; $9,000.
g. Nilson Lease; January 22, 1981, and March 5, 1981; $4,333 and $15,000.
First Amended Complaint, paragraphs 22–38.

**2.** Goose Creek and the Holsapples are in bankruptcy proceedings in Illinois. *See Vidosh v. Holsapple,* —— B.R. ——, No. 84–CV–72447–DT (E.D.Mich., Feb. 2, 1987) (Pratt, C.J.) (Partial Judgment).

The Plaintiffs' advisor for these investments was Victor Mathurin, a certified public accountant who served as managing partner of the Southfield, Michigan office of the Defendant, Fox & Company, which handled accounting for the 48th District Court, where Alice Gilbert sat as a judge. Mathurin was the Fox officer in charge of the 48th District Court account. He also served as the treasurer for Judge Gilbert's 1978 campaign for election to the Michigan Supreme Court. The Complaint alleges that Mathurin advised the Plaintiffs to invest in certain oil and natural gas leases through Goose Creek as a "no-risk" way to defray Judge Gilbert's debts following the conclusion of her Supreme Court campaign. The investments proved to be unsound.

On June 26, 1986, the Plaintiffs filed suit in this Court. Their First Amended Complaint, which was filed on January 14, 1987, charges Goose Creek, Nido Corporation,[3] and Fox and its successor firms, Alexander Grant & Co. and Grant Thornton,[4] with, *inter alia*, securities fraud, RICO violations, breach of fiduciary duty, and state common-law fraud and misrepresentation.

On December 2, 1986, this Court entered a default judgment in the amount of $141,-667 plus interest against Nido. Fox, Alexander Grant, and Grant Thornton now move for a dismissal on limitations and other grounds under Fed.R.Civ.P. 12(b)(6), or, in the alternative, for a summary judgment on the merits of the Plaintiffs' fraud and securities claims under Fed.R.Civ.P. 56.[5]

There are fourteen separate counts in the Plaintiffs' Complaint. Each is addressed in Fox's pending motion.[6] This opinion will deal with them in several categories. Part I will address limitations questions. Part II will be devoted to the question of a private right of action under section 17(a) of the Securities Act of 1933. Part III will address agency issues. Part IV will address aider-abettor and conspiracy liability. Part V will deal with breach of contract.

## I.

The Plaintiffs' investments were made in 1980 and 1981.[7] The Complaint alleges that the Plaintiffs never received any money on any of the investments, although they allegedly had been promised full repayment of their investments within six to eighteen months. However, suit was not filed until June 26, 1986. The Defendants' motion asks whether certain Counts of the Complaint were untimely filed under the particular circumstances of this case.

## A.

Assuming, though without deciding, that the instant investments are "securities" within the meaning of section 2(1) of the 1933 Securities Act (15 U.S.C. 77b(1)) and that sections 11 and 12 of that Act (15 U.S.C. 77k and 77*l*) confer a private federal right of action, this Court must first consider whether the applicable statute of limitations completely bars the Plaintiffs' claims under section 5 (15 U.S.C. 77e, which prohibits interstate commerce in unregistered securities) and section 12 (15 U.S.C. 77*l*, which creates civil liabilities for false statements in prospectuses and communications, including violations of section 5).

Section 13 of the Securities Act of 1933 (15 U.S.C. 77m) bars suit under sections 11 and 12 which have been instituted more than

> one year after the discovery of the untrue statement or omission, or after such discovery should have been made by the

---

3. Nido Corporation is a wholly-owned subsidiary of Goose Creek, which performed clerical and administrative duties for the parent corporation. First Amended Complaint, paragraph 5.

4. On May 15, 1987, this Court denied a motion to dismiss the action as to Fox's successor entities.

5. The pending motions were filed July 17, 1987. The Plaintiffs' brief in opposition was filed Au-

gust 5, 1987. Defendants' reply was filed August 17, 1987. Following a hearing on September 9, 1987, the motions were taken under advisement by the Court.

6. Hereinafter, all references to "Fox" shall be deemed to include Alexander Grant and Grant Thornton unless otherwise stated.

7. *See* n. 1 *supra.*

exercise of reasonable diligence.... *In no event* shall any such action be brought ... more than three years after the security was bona fide offered to the public or ... more than three years after the sale.

(Emphasis added.)

The Defendants argue that this statute of limitations bars the Plaintiffs' section 5 and section 12 claims as to any alleged securities fraud which occurred prior to June 26, 1983. They also argue that since the Plaintiffs made no payment after 1981, all of the alleged frauds occurred more than three years before suit was filed, and all section 5 and section 12 Securities Act claims derived therefrom are time-barred.

In response, the Plaintiffs contend that their cause of action under the federal securities laws accrued only in late 1985 when they claim to have discovered the Defendants' fraud. They assert that discovery of the fraud before that date was impossible, in spite of their exercise of due diligence, because of "assurances" from Mathurin and Holsapple[8] that the Plaintiffs' oil investments would be rewarded.

The Plaintiffs maintain that even the unconditional three-year limitation of actions under section 13 must give way to this discovery principle under the doctrine of "equitable tolling." They argue that the "assurances" which dissuaded them from initiating legal action amounted to a fraudulent concealment of the real nature of the investments, and should have tolled the applicable statute of limitations.

In order to negate a claim of fraudulent concealment, the proponent must show that the alleged victim knew facts which are sufficient to suggest to a person of ordinary intelligence that he or she has been defrauded. *Renz v. Beeman,* 589 F.2d 735, 751 (2d Cir.1978). In other words, one who would lodge a claim for fraudulent concealment is held to be under a duty to inquire, with reasonable diligence,

as to the possible existence of a cause of action. *Campbell v. Upjohn Co.,* 498 F.Supp. 722, 726–727 (W.D.Mich.1980). A successful claim of fraudulent concealment must prove that discovery was impossible despite the exercise of due diligence at all times between the alleged wrong and its detection. *Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir. 1975).

As will be more fully discussed with regard to the Plaintiffs' common-law fraud claim, *see* Part I–B below, the question whether the Plaintiffs consistently exercised the requisite diligence during the relevant time period is a genuine issue of material fact. Therefore, this Court declines to decide the fraudulent concealment issue on a motion for summary judgment.

However, the three-year limitation within section 13 has been held by its terms to be an absolute bar, even against allegations of fraudulent concealment and the "equitable tolling" of the limitations period which such allegations might otherwise warrant. *See, e.g., Cook v. Deltona Corp.,* 753 F.2d 1552, 1562 (11th Cir.1985); *Bull v. American Bank & Trust Co. of Pa.,* 641 F.Supp. 62 (E.D.Pa.1986). *Cook v. Avien,* 573 F.2d 685, 698 (1st Cir.1978), clarified the overriding policy behind a strict, unconditional statute of limitations in this area as being for the protection of the securities markets from manipulation by investors who would use a potential claim merely as insurance against investment loss in the indefinite future.

Thus, notwithstanding the Plaintiffs' fraudulent concealment claim, this Court must construe the "in no event" three-year prohibition clause in section 13 as being unconditional, thereby precluding a right of action on all of those Counts which must be brought within three years after the subject securities were purchased, sold or delivered.

8. "They [Robert Holsapple and Victor Mathurin] both made assurances to me ... there was no question in the representations that the oil was there, and with respect to the Robinson [one of the leases] that it was operating and that it was paying.... There was no problem about anything failing." Deposition of Alice Gilbert, April 16, 1987, Appendix A to Defendant's Reply Brief, at 81.

■ In one other attempt to avoid section 13, the Plaintiffs claim that the "offer, sale or delivery" of the fraudulent Goose Creek securities took place less than three years prior to suit. *Doran v. Petroleum Management Corp.*, 576 F.2d 91, 93 (5th Cir.1978). *Doran* held that under section 13 of the 1933 Securities Act, the limitations calculation for section 12 violations depended upon "which of the defendant's activities—offer, sale or delivery—occurred last." *Id.*

To advance their *Doran* argument, the Plaintiffs ask this Court to construe "delivery" to include certain correspondence in 1986 relating to "assignment" provisions which (1) were part of the 1980 and 1981 lease agreements, and (2) called for them to assign portions of their leasehold interests to Goose Creek. They argue that the Defendants (at least Goose Creek and the Holsapples) used the mail in 1986 to send "assignments" which showed the extent of the Plaintiffs' investments, and "demands" for increased investments. It is the Plaintiffs' position that this "at least creates an issue of fact" as to when "delivery" occurred under the statute.

In order to evaluate "delivery," as the Plaintiffs have defined the word, this Court must first construe the 1986 "assignment" correspondence as a "security." The definition of "security" under section 2(1) of the statute, 15 U.S.C. 77b(1), has been extended to such documents as certificates of interest in partnerships or cooperatives, *see Pawgan v. Silverstein*, 265 F.Supp. 898 (S.D.N.Y.1967), but not to such documents as certificates of deposit, *see New York State Insurance Superintendent v. Bankers' Life & Casualty Insurance Co.*, 300 F.Supp. 1083 (S.D.N.Y.1969).

However, "evidence of indebtedness" under the Securities Acts connotes an original instrument, not merely a reference to the existence of one. All of the various types of writings which have been mentioned in the cases cited above are executions or integrations of underlying arrangements, and their construction by the courts is, in essence, a characterization of those arrangements. The Plaintiffs in the instant case would have this Court construe correspondence that discusses but does not change certain terms of a pre-existing lease agreement as though it were the instrument which created that agreement. It would be unprecedented to hold that the tender of a security under the Act can mean the delivery of an investment statement if the instant "assignment" documents are (as the Plaintiffs suggest) "investment statements" or some other means of demonstrating the extent of an investor's holdings. Certainly, the tender of solicitations (or, as the Plaintiffs call them, "demands") for further investments cannot be construed as a tender of securities under the Act.

Thus, this Court cannot accept the Plaintiffs' *Doran* argument for two reasons. First, since the Plaintiffs claim that the Defendants' fraud was discovered by them in 1985, it cannot be said that they had no notice of their leasehold interests prior to the 1986 correspondence cited as "delivery." Second, it would call for an impermissible contortion of section 13 to allow "delivery" in 1986 to serve as a legal prerequisite to the conveyance of investment interests which the Plaintiffs acknowledge were actually created in 1980 and 1981. Thus, this Court determines that the Plaintiffs' "delivery" argument does not provide any basis for avoiding the section 13 limitation of actions to three years after the sale of the subject securities.

Accordingly, because no ground exists upon which to release the Plaintiffs' section 5, section 11 and section 12 Securities Act claims from the applicable statute of limitations, this Court holds that those claims are barred, and all counts based thereon are dismissed.

■ The Court turns next to Count VII of the Complaint, which alleges violations of a Michigan state statute which requires securities to be registered with the State before being sold. M.C.L. 451.701. However, under M.C.L. 451.810(e), a private civil action to enforce section 451.701 may not be brought more than two years after the sale. As the Defendants correctly point out in their summary judgment motion, this

statute of limitations bars suit as to any securities that were sold to the Plaintiffs before June 26, 1984. Because all of the Plaintiffs' investments were made before this date, Count VII must be dismissed for failure to state a claim.

Finally, Count VIII of the Complaint alleges violations of M.C.L. 451.501, 451.601, and 451.810(a)(1) and (a)(2). The Court notes that no private right of action exists under M.C.L. 451.501. *IDS Progressive Fund, Inc. v. First of Michigan*, 533 F.2d 340 (6th Cir.1976). Actions under sections 451.601 and 451.810(a)(1) are subject to an "in no event" two-year limitations period, while the absolute limitation which governs actions under section 810(a)(2) is four years after the contract of sale. M.C.L. 451.810(e). The Plaintiffs brought suit more than five years after their last Goose Creek investment had been made, *see* n. 1 *supra*. Accordingly, no part of Count VIII may survive the Defendants' motion to dismiss.

In summary, this ruling entirely disposes of the following counts: Count I, alleging violations of sections 5(a) and 5(b)(2) of the Securities Act of 1933, 15 U.S.C. 77e(a) and 77e(b)(2) respectively; Count II, alleging violations of Regulation D under section 5 of the 1933 Securities Act (Rules 501–506), 17 C.F.R. 230.501–230.506;[9] Count III, alleging violations of section 12(2) of the 1933 Securities Act, 15 U.S.C. 77l(2); and Count VII, alleging violations of M.C.L. 451.701; and Count VIII, alleging violations of M.C.L. 451.501, 451.601, and 451.810(a)(1) and (a)(2).

## B.

The Defendants urge that Counts V, VI, and XII of the Complaint should be treated together for limitations purposes, even though Count V alleges a violation of section 10(b) of the 1934 Securities Act, Count VI charges fraud under Michigan common law, and Count XII claims breach of fiduciary duties under Michigan common law.

Section 10(b) of the 1934 Securities Act does not carry an express statute of limitations. Faced with this problem, the Court of Appeals for the Sixth Circuit has borrowed the state common-law fraud limitations period by analogy. *Charney v. Thomas*, 372 F.2d 97 (6th Cir.1967). In Michigan, common-law fraud and breaches of fiduciary duty are subject to the same six-year limitation of "other personal actions" in M.C.L. 600.5813. *See Goodrich v. Waller*, 314 Mich. 456, 22 N.W.2d 862 (1946). Accordingly, the Court will apply the same limitations analysis to Counts V, VI, and XII, as the Defendants have suggested.

Michigan common-law fraud actions must be brought within six years of the fraudulent act or acts sued upon. M.C.L. 600.5813. However, at least with regard to federal securities fraud claims, federal courts have applied state statutes of limitations by utilizing a federal discovery rule, to wit, that the cause of action accrues only upon discovery of the fraud given reasonable diligence. *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1413 (9th Cir.1987), *citing SEC v. Seaboard Corp.*, 677 F.2d 1301, 1309 (9th Cir.1982).

Additionally, a Michigan statute, M.C.L. 600.5855, extends the six-year common-law fraud limitations period to avoid penalizing plaintiffs from whom the existence of a fraud action was fraudulently concealed. The extension applies if an aggrieved party, who continually exercised due diligence, failed to discover the existence of a cause of action for fraud at any time until two years or less before the suit was brought.

The term "fraudulent concealment" means the employment of an artifice to prevent inquiry and to hinder the acquisition of information which would disclose a right of action. *United Auto Workers Int'l Union v. Wood*, 337 Mich. 8, 13–14, 59

---

**9.** This Court adopts the Defendants' view that since Regulation D was put into effect to deal with securities which are exempt from the regis-

tration requirements of section 5, this Court should borrow the limitations period that is

N.W.2d 60 (1953).[10] The Michigan fraudulent concealment statute was "not intended to help parties who took no pains to see what was before their eyes." *Schram v. Burt,* 111 F.2d 557 (6th Cir.1940). The law imputes to the Plaintiffs in this case knowledge that was sufficient to convince an ordinary person that fraud is occurring. *Id.*

■ However, as the Plaintiffs persuasively argued to this Court, an investment which was not expected to pay off immediately cannot be deemed to be fraudulent as a matter of law from the moment of its making, even though fraud may have occurred when the investment's subsequent failure was masked by false assurances of success. In the instant case, the Plaintiffs were promised that their investments would bear fruit six to eighteen months after they were made. Thus, it is possible that even the earliest of the Plaintiffs' investments in March 1980 only became *fraudulent* as of September 1981, or alternatively, should only have become *suspect* as of that date and no earlier. Either of these possibilities, if proven, would save the Plaintiffs' common-law fraud and section 10(b) claims from a six-year bar.

This Court believes that these questions raise genuine and difficult issues of material fact, which are wholly inappropriate for resolution at the summary judgment stage. Hence, the Court leaves for the trier of fact to determine (a) whether the Plaintiffs' Goose Creek lease investments were frauds when proposed, or only became fraudulent at some time afterwards (and, if so, at what time), and (b) if there was fraud, when it was discovered or should have been discovered.

Since there can be no disposition of the limitations issue addressed in this Part (Part I–B) of the present opinion without these determinations of fact, it follows that a resolution of these questions will have to await a trial on the merits of the Plaintiffs'

case. *See Byers v. Burleson,* 713 F.2d 856 (D.C.Cir.1983).

## C.

■ The Defendants move for a summary judgment on limitations grounds as to Count IX, which alleges violations of the Racketeering Influenced and Corrupt Organizations Act of 1984 (RICO).

In *Agency Holding Corp. v. Malley–Duff & Associates, Inc.,* —— U.S. ——, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987), the Supreme Court held that the four-year statute of limitations which was applicable to Clayton Act civil enforcement actions, 15 U.S.C. 15b, applies to civil actions under RICO, as well.

*Agency Holding* reasoned that since RICO and the Clayton Act used the extraordinary treble damages remedy as a "carrot" to enlist the help of "private attorneys general" in prosecuting violations of the law, "[t]he Clayton Act ... offers a far closer analogy to RICO than any state law alternative." —— U.S. at ——, 107 S.Ct. at 2764. The Court held that a nationwide uniform limitations period was essential to promote RICO enforcement, and that the remedial purposes of the statute required a four-year period of limitations rather than the shorter periods which individual states might choose to borrow from their own law. *Id.*

This Court believes that the rationale of the *Agency Holding* decision requires an application of the limitations accrual principles of the Clayton Act, as well as its limitations period, to the instant case.

In *King & King Enterprises v. Champlin Petroleum Co.,* 657 F.2d 1147, 1154 (10th Cir.1981), the Court held that, where fraud was alleged, the limitations period for private civil actions under the Clayton Act began to run only when the fraud was discovered or should have been discovered through the exercise of reasonable diligence. It follows from *Champlin, Burle-*

applicable to section 5 actions for the Plaintiffs' Regulation D claim.

**10.** The *Wood* Court noted that a defrauder's concealment of his agency relationship with an-

other person or entity is not such fraudulent concealment as would toll the statute of limitations in an action against the agent. *Wood,* 337 Mich. at 14, 59 N.W.2d 60.

*son,* and the reasoning of this opinion with regard to fraud and fraudulent concealment that genuine issues of fact exist on the merits of Count VII. ·

■ The Court recognizes that the invocation of *Agency Holding* in the instant matter relates to a RICO cause of action which allegedly arose in 1981. However, retroactive application of federal judicial decisions is permissible, except where such application would defeat a statutory purpose, impose undue hardship upon a party, or overrule clear precedent so as to upset settled expectations. *Chevron Oil Co. v. Huson,* 404 U.S. 97, 106–07, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971); *see also Davis v. A.G. Edwards & Sons, Inc.,* 823 F.2d 105 (5th Cir.1987).

■ Because RICO was enacted in 1984, and *Agency Holding* and other cases which effectuate and interpret RICO are so recent, this Court finds that no settled expectation could have evolved by now that would operate as an unfair surprise or burden upon the parties to this suit. Therefore, the Court discerns no impediment to applying *Agency Holding* retroactively to determine the accrual date for the Plaintiffs' RICO claim in this case. This holding on the RICO limitations accrual question mirrors that in *Snider v. Lone Star Art Trading Co.,* 672 F.Supp. 977, 984 (E.D. Mich.1987) (Cook, J.).

Accordingly, because the date of accrual of the Plaintiffs' RICO claim is still in doubt, the Court cannot grant a summary judgment as to Count IX of the Complaint.

The analysis in this Part (Part I) of the opinion makes it logically impossible to grant a summary judgment as to any counts within the Plaintiffs' Complaint (whatever their applicable periods of limitations) which incorporate a claim of late discovery, except those federal Securities Act counts that are subject to the absolute three-year bar that was addressed in Part I–A above.

Thus, a summary judgment must be denied as to Count V, which alleges violations of section 10(b) and Rule 10b–5 of the federal Securities Act of 1934; Count VI, which asserts fraud under Michigan common law; Count XI, which claims negligence under Michigan common law; Count IX, which charges violations of the federal Racketeering Influenced and Corrupt Organizations Act of 1984 (RICO); and Count XII, which complains of a breach of fiduciary duties under Michigan common law.

## II.

■ The Defendants argue that Count IV of the Complaint, which sets forth violations of section 17(a) of the 1933 Securities Act, 15 U.S.C. 77q, should be dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim, on the ground that section 17(a) confers no private right of action.

Relevant authority is split on this important question. *See, e.g., Kirshner v. United States,* 603 F.2d 234, 241 (2d Cir.1978) (section 17(a) confers a private right of action); *Landry v. All American Insurance Co.,* 688 F.2d 381 (5th Cir.1982) (no private right of action may be implied in 17(a)).

The Court of Appeals for the Sixth Circuit has never spoken on the question, and the Supreme Court has expressly reserved it. *Herman and Maclean v. Huddleston,* 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548 (1983). In *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court held that section 10(b) of the Securities Act, specifically Rule 10b–5, confers a private right of action. Those courts which have since found a private right of action under section 17(a) reasoned that if Congress accorded such a right to aggrieved securities buyers under section 10(b), then "there is little practical point in denying the existence of a private right of action under section 17(a)." *Kirshner,* 603 F.2d at 241.

This Court has found a private right of action under section 17(a). *U.S. Equipment Co. v. Scandex Co.,* No. 85–4494 (E.D.Mich., Sept. 30, 1986) (Cook, J.). However, the trend among the Circuits since the last examination of the issue by this Court now appears to have accelerated toward a consensus that section 17(a) does

not accord private citizens a right of action. *See In re Washington Public Power Supply System (W.P.P.P.S.) Securities Litigation*, 823 F.2d 1349, 1352 (9th Cir.1987) (*en banc*), and cases cited. In a separate action which arose from the same allegedly fraudulent Goose Creek scheme, another Judge of this Court has declined to recognize such a right. *Vidosh v. Holsapple*, No. 84–CV–72447–DT (E.D.Mich., Feb. 2, 1987) (Pratt, C.J.).

Among the Circuits which formerly favored a private right of action under section 17(a), the Ninth Circuit Court of Appeals has roundly repudiated its prior recognition of such a right. *In re W.P.P.S.S.*, *supra* (*overruling Mosher v. Kane*, 784 F.2d 1385 (9th Cir.1986); *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981)). The Court of Appeals for the Seventh Circuit has recently opined that the existence of such a right is "an open question." *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir.1985). The Tenth Circuit Court of Appeals has expressed "considerable doubt" as to whether such a right exists, *Ohio v. Peterson, Lowry et al.*, 651 F.2d 687, 689 n. 1 (10th Cir.), *cert. denied*, 454 U.S. 895, 102 S.Ct. 392, 70 L.Ed.2d 209 (1981). The Court of Appeals for the Second Circuit has suggested that its earlier conclusion in *Kirchner* may be open to reconsideration, *Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2d Cir.1985). The Fourth Circuit Court of Appeals has indicated a lack of confidence in its prior recognition of the right, *SEC v. American Realty Trust*, 586 F.2d 1001, 1006–07 (4th Cir.1978).

The Court of Appeals for the Eighth Circuit, *see Deviries v. Prudential–Bache Securities, Inc.*, 805 F.2d 326, 328 (8th Cir.1986), has never favored the right. The Third Circuit Court of Appeals has not yet addressed the issue, although its district courts appear not to favor the right, *see, e.g., Mursau Corp. v. Florida Penn Oil & Gas, Inc.*, 638 F.Supp. 259, 261 (W.D.Pa. 1986), *aff'd without opinion*, 813 F.2d 398 (3d Cir.1987).

The Supreme Court test for implying private rights of action in *Cort v. Ash*, 422 U.S. 66, 78, 95 S.Ct. 2080, 2088, 45 L.Ed.2d 26 (1975), was recently reaffirmed in *Massachusetts Mutual Life Ins. Co. v. Russell*, 473 U.S. 134, 145, 105 S.Ct. 3085, 3092, 87 L.Ed.2d 96 (1985). *Russell* identified two elements of that test (to wit, the congressional intent to create a private right, and the consistency of such a right with the underlying statutory scheme) as being determinative.

The Ninth Circuit Court of Appeals specifically concluded that although section 17(a) embodied

> a general censure of fraudulent practices, ... there simply is no indication, explicit or implicit, of legislative intent to create a private right of action under section 17(a).... The presence of express civil remedies within the same act militates against a finding of Congressional intent to create further remedies.... Implying a private right of action under section 17(a) is also inconsistent with the statutory scheme of the Securities Act.... [Doing so] attributes to Congress the rather bizarre intention of enabling a purchaser to avoid the statute of limitations and other procedural limitations which it explicitly provided would apply to private actions under sections 11 and 12.

*In re W.P.P.P.S.*, 823 F.2d at 1353–54.

The fraud complained of in the instant case is not the "insider trading" which is identified in section 10(b). Rather, it appears to be more of a private wrong of misrepresenting the nature and the risks of an investment for the purpose of inducing a potential investor to aquire an interest. Both of these frauds involve the misuse of the power of information which the framers of the Securities Acts sought to prevent. However, the frauds within these two sections are distinctly different.

As is inescapable from its review of current law, this Court concludes that the rationale of *Kirshner*, which extended section 10(b) to section 17(a) by default rather than by adopting the legislative intent which is specific to that section, has all but

reached the end of its life in the federal courts. After evaluating the decision in *In re W.P.P.P.S.*, this Court now declines to place itself in the dwindling minority of federal courts which equate the two sections of the Act for private right of action purposes.

Accordingly, count IV of the Plaintiffs' complaint must be dismissed for failure to state a claim on which relief can be granted. Fed.R.Civ.P. 12(b)(6).

## III.

Throughout their Complaint, the Plaintiffs allege that Mathurin acted as an agent of his accounting firm in all of his dealings involving the Plaintiffs and their Goose Creek lease investments. On this theory, Fox, Alexander Grant, and Grant Thornton were named as Defendants in every Count of the Complaint. Thus, to survive against these Defendants on a motion for summary judgment, every Count of the Complaint which alleges a wrongdoing by Mathurin must present a genuine issue of material fact on the agency question.

That question is essentially whether Mathurin's alleged wrongdoing was committed in his personal capacity or in his role as an agent of Fox. To decide this question, the Court must attempt to determine precisely where Mathurin's affiliation with Fox left off and his personal relationship with the Plaintiffs began, or where the Plaintiffs should have construed that line to be. American Law Institute, Restatement (2d) of Agency, sections 140, 159.

The relevant section of the Michigan Uniform Partnership Act, M.C.L. 449.9 (partner as agent of partnership), states that [e]very partner is an agent of the partnership for the purpose of its business, and the act of every partner ... binds the partnership, unless the partner so acting has in fact no authority to act for the partnership in the particular matter, and the person with whom he is dealing has knowledge of the fact that he has no such authority.

M.C.L. 449.13 (partnership liability for wrongful acts of partner), also relevant here, states that

Where, by any wrongful act or omission of any partner acting in the ordinary course of ... the partnership, ... loss or injury is caused to another person [outside] the partnership, ... the partnership is liable therefor to the same extent as the partner so acting or omitting to act.

The Plaintiffs contend that Mathurin possessed at least the apparent authority to act with regard to their Goose Creek investments. To prove this point, Michigan requires the proponent to prove some act of the principal which tends to suggest to a third party that an agent has authority for the act in question. *Westchester Fire Insurance Co. v. Hanley*, 284 F.2d 409 (6th Cir.) (1960), *cert. denied*, 365 U.S. 869, 81 S.Ct. 903, 5 L.Ed.2d 860 (1961). Apparent authority may not be established from the acts of an agent alone. *Przeradski v. Rexnord, Inc.*, 119 Mich.App. 500, 326 N.W.2d 541 (1982).

The Plaintiffs argue further that Mathurin possessed the implied authority to act as an agent of Fox with regard to their Goose Creek investments. Implied authority is an implicit extension of the actual or express authority which a principal confers upon an agent. The powers of implied authority "naturally flow from the principal-agent relationship." *Grosberg v. Michigan National Bank*, 420 Mich. 707, 716, 362 N.W.2d 715 (1984). In *Grosberg*, the Michigan Supreme Court construed M.C.L. 449.9 as "broad enough to encompass the usual definition of implied, as well as apparent, authority." *Id.*

It is undisputed that Mathurin was a managing partner in the Fox Southfield, Michigan office until May 1981, and that in such capacity he supervised all of the accounting work for the 48th District Court. He also rendered certain accounting services in connection with the Gilbert Family Partnership, and prepared tax returns for Judge Gilbert and for the Partnership beginning with the 1979 tax year. For present purposes, this Court assumes but does not hold that these activities were performed in Mathurin's capacity as a Fox agent.

It is also uncontested that Mathurin was the treasurer for Judge Gilbert's 1978 Supreme Court election campaign. Although the Plaintiffs do not concede that these services were performed in Mathurin's personal capacity, Judge Gilbert testified at deposition that he felt "personally responsible" for the substantial debts which remained after her 1978 election campaign was over.

There is no dispute that Mathurin departed as a Fox partner in May 1981, approximately one month after the Plaintiffs' last Goose Creek investment had been made. Thus, whatever help Mathurin provided in creating the Plaintiffs' investment interests was given before he left Fox's employment, and while Fox was preparing the Gilbert family tax returns.

However, there is a dispute as to what Judge Gilbert knew about Mathurin's relationship to Fox with specific regard to the Goose Creek investments. She stated during a deposition that Mathurin had told her of other, albeit unnamed, Fox clients who had invested in Goose Creek leases. Indeed, Mathurin allegedly told her that he had also performed the accounting for the Goose Creek holdings of those other Fox clients, and thus could attest to the value of the investments. However, during his deposition, Mathurin denied that he had so informed her, and affirmatively asserted his belief that she did not assume that his advice on Goose Creek investments was the advice of the firm.

Mathurin's beliefs about Judge Gilbert's assumptions are no defense for Fox against the Plaintiffs' agency claims. Apparent authority exists wherever it is shown that a party reasonably relied on the appearance of agency. American Law Institute, Restatement (2d) of Agency, section 159; *Windsor Steel Products, Ltd. v. Whizzer Industries, Inc.*, 157 F.Supp. 284, 288–289 (E.D.Mich.1957) (Levin, J.).

Mathurin testified at deposition that he advised the Plaintiffs about the tax consequences of the Goose Creek investments. He also acknowledged that he did not discuss with Judge Gilbert whether he was dispensing Goose Creek advice personally or as a Fox agent. In assessing whether Judge Gilbert reasonably believed that there was an agency relationship, the Court cannot defer to Mathurin's view of what Judge Gilbert believed or should reasonably have believed.

This Court finds insufficient evidence upon the present record to determine, *inter alia,* (a) whether Mathurin conducted any or all of his Goose Creek affairs with the knowledge or acquiescence of Fox while he was still with the firm, (b) when Mathurin ceased all professional relations with Fox, and when the Plaintiffs became aware or should have become aware of that event, or (c) whether a complete termination of relations between Mathurin and Fox effectively severed, or should have severed, the link between the two in the minds of the Plaintiffs.

The facts in this cause would support a jury's conclusion that Mathurin had the apparent authority to act as an agent of Fox when he offered Goose Creek investments and advice to the Plaintiffs. The facts of record would also support a conclusion that Fox had granted Mathurin the implied authority to offer or vouchsafe Goose Creek investments to his clients.

Therefore, to the extent that any Count of the Plaintiffs' Complaint rests on the claim of an agency relationship, the foregoing analysis compels a denial of a summary judgment in favor of Fox.

## IV.

The Plaintiffs seek to impose several kinds of secondary liability upon Fox for the alleged torts of Mathurin. In addition to the traditional notion of *respondeat superior* which underlies most of the Complaint, Count XIII alleges that Fox aided and abetted securities violations and fraud, and Count XIV alleges that Fox conspired in the wrongdoing from which the instant suit arises.

The Court has already determined that genuine issues of fact exist as to the liability of Fox for the alleged torts of Mathurin. However, Fox seeks a summary judgment on the aiding and abetting and conspiracy

counts on the ground that even if Mathurin actively participated in the wrongs of the Goose Creek scheme, or knew of them and did nothing, no other Fox partner had (or reasonably should have had) any idea of Mathurin's Goose Creek dealings. Thus, it is argued that no one at Fox could have aided, abetted or conspired in Mathurin's alleged torts.

Fox claims that an essential distinction exists between a claim that Fox, through Mathurin, misled the Plaintiffs into their ill-starred investments, and a claim that Fox aided in the commission of the wrongs by keeping silent when it should have investigated and stopped (or at least disclosed) Mathurin's actions. Fox argues that to hold the firm liable as an aider and abettor, the Court must impute to it more than vicarious knowledge and nondisclosure of the alleged frauds.

The Sixth Circuit Court of Appeals has held that proof of aider-abettor liability requires evidence that the action or inaction of the alleged aider or abettor was consciously intended to aid in the violations of law about which the victim complains. *SEC v. Washington County Utility District*, 676 F.2d 218, 226 (6th Cir.1982). One who aided in or abetted a securities violation must have "knowingly and substantially [assisted] the violation." *SEC v. Coffey*, 493 F.2d 1304, 1316 (6th Cir.1974), *cert. denied*, 420 U.S. 908, 95 S.Ct. 826, 42 L.Ed. 2d 837 (1975).

In *Sandusky Land, Ltd. v. Uniplan Groups, Inc.*, 400 F.Supp. 440, 444 (N.D. Ohio 1975), the Court ruled that an accounting firm could be held liable as an aider-abettor of violations of section 12(2) of the 1933 Securities Act. The accounting firm in *Uniplan* had allegedly issued a misleading written opinion to investors concerning the tax benefits of a recommended investment. Even though the firm was not the actual seller of the offending securities, the Court found no use in " 'attempting to delineate a legally cognizable distinction between ... persons ... exposed to liability under section 12(2) and those persons charged with aiding and abetting and conspiring in the violation of [that section].' "

*Id.* at 444, *citing In re Caesars Palace Securities Litigation*, 360 F.Supp. 366, 380–381 (S.D.N.Y.1973).

A fraud claim alleges more direct involvement in deception than an aider-abettor claim. Proof of aider-abettor liability merely requires evidence that the aider or abettor consciously intended his action or inaction to aid others in violating the law. *Coffey*, 493 F.2d at 1316. Such proof is different only in degree from that required to establish liability for actual fraud. "No one of these formulations is a 'magic word'; in effect, each of them indicates participation to one degree or another.... [T]he extent of this participation [is a question of fact]." *Caesars Palace*, 360 F.Supp. at 381.

The Plaintiffs contend, and Fox denies, that the firm is vicariously liable for Mathurin's alleged aiding and abetting of the frauds of Goose Creek. The Court finds no reason in law to dismiss the Plaintiffs' agency-based aider-abettor claim merely because it entails two logical steps (to wit, (1) agency and (2) actual aider-abettor liability of the agent) rather than the one step which is required to establish liability for the tort in the first instance.

On the facts of this case, it would be unprincipled to deny a summary judgment on a claim of vicarious liability for fraud, and, at the same time, to grant a summary judgment on a claim of vicarious aider-abettor liability for that fraud. Aiding, abetting or conspiring in fraud are torts just as much as fraud is a tort. Under M.C.L. 449.13, *supra*, a partnership may be liable for the torts of its partners. Since issues of fact exist concerning Fox's involvement through Mathurin in an actual fraud, issues of fact must logically also exist with regard to Fox's involvement through Mathurin in his aiding and abetting of fraud. Hence, this Court determines that Fox personnel other than Mathurin need not personally have aided or conspired in the fraud in order to be liable to the Plaintiffs on Counts XIII or XIV.

Accordingly, summary judgment must be denied as to Counts XIII and XIV.

## V.

Fox, Alexander Grant, and Grant Thornton contend that Count X of the Complaint, which asserts a breach of contract under the common law of Michigan, is not directed at them. The Plaintiffs agree. Accordingly, Count X is dismissed as against those Defendants under Fed.R.Civ.P. 12(b)(6).

## VI.

This opinion disposes of the following Counts: Count I, claiming violations of sections 5(a) and 5(b)(2) of the Securities Act of 1933, 15 U.S.C. 77e(a) and 77e(b)(2) respectively; Count II, alleging violations of Regulation D under section 5 of the 1933 Securities Act (Rules 501–506), 17 C.F.R. 230.501–230.506; Count III, asserting violations of section 12(2) of the 1933 Securities Act, 15 U.S.C. 771(2); Count IV of the Complaint, which charges violations of section 17(a) of the 1933 Securities Act, 15 U.S.C. 77q; Count VII, alleging violations of M.C.L. 451.701; Count VIII, setting forth violations of M.C.L. 451.501, 451.601, and 451.810(a)(1) and (a)(2); and Count X, complaining of breach of contract under Michigan common law.

The following counts survive the Defendants' motion to dismiss or for summary judgment: Count V, charging violations of section 10(b) of the federal Securities Act of 1933, and of Rule 10b–5 thereunder; Count VI, alleging fraud under Michigan common law; Count IX, claiming violations of the federal Racketeering Influenced and Corrupt Organizations Act of 1984 (RICO); Count XI, complaining of negligence under Michigan common law; Count XII, asserting breach of fiduciary duties under Michigan common law; Count XIII, alleging that Fox aided and abetted securities violations and fraud; and Count XIV, claiming that Fox conspired in the wrongdoing from which the instant suit arises.

IT IS SO ORDERED.