Martin I. NOVECK and Susan E. Noveck, Plaintiffs,

v.

John J. MILLER, Mary A. Miller, Paul Underwood, Professional Investors Fund, Inc., J. Miller & Associates, Ltd. and Underwood & Associates, Inc., Defendants.

Civ. A. No. 89–CV–73559–DT.

United States District Court, E.D. Michigan, S.D.

Dec. 12, 1990.

---

Daniel J. Weiner, Donna J. Lehl, Schafer & Weiner, Birmingham, Mich., for plaintiffs.

John Sharp, Strobl & Manoogian, Birmingham, Mich., for defendants.

## MEMORANDUM OPINION AND ORDER GRANTING SUMMARY JUDGMENT FOR DEFENDANTS PAUL UNDERWOOD AND UNDERWOOD & ASSOCIATES, INC.

FRIEDMAN, District Judge.

This matter is presently before the court on the November 2, 1990, motion of defendants Paul Underwood and Underwood & Associates, Inc., for summary judgment. Plaintiffs have filed a response. Pursuant to Local Rule 17(1)(2) of the United States District Court for the Eastern District of Michigan, the court shall decide this motion without an oral hearing. Accordingly, the December 13, 1990, hearing date indicated on the court's November 8, 1990, notice of hearing, is cancelled.

*Background*

Plaintiffs allege in their complaint that in 1986 they bought stock in Professional Investors Fund, Inc. ("PIF"). In offering and selling this stock, defendants allegedly violated section 12(2) of the Securities Act of 1933, 15 U.S.C. § 77l(2) (count 1) and section 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b) (count 2) by making various material misrepresentations, and failing to disclose material information.[1] For relief, plaintiffs seek recision of the sale, an award of the purchase price of $30,200 (or damages in this amount), costs, interest, and attorney's fees.

According to the complaint, defendant Paul Underwood was a director and the vice-president of PIF, and the vice-president of Underwood & Associates, Inc. Defendant Underwood & Associates, Inc. allegedly "acted as a promoter and a consultant to the offering of securities of PIF to the Novecks." Complaint, para. 9.

*Summary Judgment Standard*

Under Fed.R.Civ.P. 56(c), summary judgment is appropriate if

the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The burden is on the party opposing summary judgment to "set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* dispute as to any *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (emphasis in original). Viewing the evidence "in the light most favorable to the opposing party," *Adickes v. S.H. Kress & Co.*, 398 U.S. 144,

---

1. In counts 3, 4, and 5, the complaint asserts additional claims for fraud, misrepresentation, and malpractice against defendants John Miller and J. Miller & Associates. The only claims involving Paul Underwood and Underwood & Associates, Inc., are the securities claims presented in counts 1 and 2.

157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970), summary judgment should be entered only if the evidence is so one-sided that a reasonable fact-finder could not find for the opposing party. *See, e.g., Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1478–80 (6th Cir. 1989).

### Defendants' Summary Judgment Motion

#### A.

In their summary judgment motion, defendants first argue that count 1, based on § 12(2) of the 1933 Act, is time barred. The limitations period for an action brought under § 12(2) is specified in 15 U.S.C. § 77m, which states:

> No action shall be maintained to enforce any liability created under section 77k or 77*l* (2) of this title unless brought within one year after the discovery of the untrue statement or the omission, or after such discovery should have been made by the exercise of reasonable diligence ... *In no event shall any such action be brought to enforce a liability created ... under section 77l(2) of this title more than three years after the sale.*

(Emphasis added.)

Attached to plaintiffs' complaint as Exhibit A are copies of the checks plaintiffs used to pay for the securities at issue in this case. A $5,000 payment was made with a check dated July 29, 1986, which was cashed the same day. The balance of $25,200 was paid with a check dated October 13, 1986, which was cashed on October 15, 1986. *See also* Complaint, para. 12. Plaintiffs' complaint was filed with this court on December 7, 1989.

The sale was completed, at the latest, when defendants accepted plaintiffs' October 13, 1986, check. For present purposes, the court may assume that this check was accepted on the date it was cashed, October

15, 1986. Thus, even assuming that the outermost limitations period applies, plaintiffs would have had to file suit no later than October 15, 1989. Plaintiffs missed this deadline by more than seven weeks.

■■■ Plaintiffs argue that the limitations period was tolled because of defendants' fraudulent concealment. The court must reject this argument. The first sentence of 15 U.S.C. § 77m requires an action brought under § 77*l* (2) to be filed within one year after the discovery of actionable omissions or false statements. The second sentence qualifies the first by stating that "[i]n no event shall any such action be brought ... more than three years after the sale." This second sentence clearly manifests Congressional intent to place an absolute (i.e., "untollable") three-year time limit within which investors may bring an action under § 77*l* (2). Thus, the doctrines of fraudulent concealment and equitable tolling, which may serve to toll the limitations period governing other causes of action,[2] have no application to actions brought under § 77*l* (2). *See, e.g., Gilbert Family Partnership v. Nido Corp.*, 679 F.Supp. 679, 683 (E.D.Mich.1988); *In re Rexplore, Inc. Securities Litigation*, 671 F.Supp. 679, 687 (N.D.Cal.1987); *Richey v. Westinghouse Credit Corp.*, 667 F.Supp. 752, 754–55 (W.D.Okla.1986); *Bull v. American Bank and Trust Company*, 641 F.Supp. 62, 64–65 (E.D.Pa.1986). Accordingly, the court shall grant defendants' motion for summary judgment as to count 1.

#### B.

■■■ The Underwood defendants next argue they are entitled to summary judgment as to count 2 because plaintiffs have no evidence to show that they violated section 10(b) of the 1934 Act with the requisite scienter.

Section 10(b) of the 1934 Act, codified as 15 U.S.C. § 78j(b), states:

**2.** The cases cited by plaintiffs are inapposite. Both *Dayco Corp. v. Goodyear Tire & Rubber Company*, 523 F.2d 389 (6th Cir.1975), and *Akron Presform Mold Company v. McNeil Corp.*, 496 F.2d 230 (6th Cir.1974), were antitrust actions. *Charney v. Thomas*, 372 F.2d 97 (6th Cir.1967), involved an action brought under section 10(b) of the 1934 Act which, unlike the 1933 Act, does not expressly prescribe a limitations period.

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

\* \* \* \* \* \*

(b) To use or employ, in connection with the purchase or sale of any security registered on a national securities exchange or any security not so registered, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

Securities and Exchange Commission Rule 10b–5, codified as 17 C.F.R. § 240.10b–5, states:

It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

(a) to employ any device, scheme, or artifice to defraud,

(b) to make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statement made, in the light of the circumstances under which they were made, not misleading, or

(c) to engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person,

In connection with the purchase or sale of any security.

The 1934 Act sought " 'to substitute a philosophy of full disclosure for the philosophy of caveat emptor and thus to achieve a high standard of business ethics in the securities industry.' " *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 151, 92 S.Ct. 1456, 1471, 31 L.Ed.2d 741 (1972), *quoting SEC v. Capital Gains Research Bureau*, 375 U.S. 180, 186, 84 S.Ct. 275, 280, 11 L.Ed.2d 237 (1963). In examining its legislative history, the Supreme Court has found that section 10(b) was intended

to be "a catchall clause to prevent fraudulent practices." *Chiarella v. United States*, 445 U.S. 222, 226, 100 S.Ct. 1108, 1113, 63 L.Ed.2d 348 (1980); *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 203, 96 S.Ct. 1375, 1385, 47 L.Ed.2d 668 (1976). The Supreme Court has indicated that section 10(b) and Rule 10b–5 must "be construed 'not technically and restrictively, but flexibly to effectuate its remedial purposes.' " *Affiliated Ute Citizens*, 406 U.S. at 151, 92 S.Ct. at 1471, *quoting Capital Gains Research Bureau*, 375 U.S. at 195, 84 S.Ct. at 285. *See also Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 475–76, 97 S.Ct. 1292, 1301–02, 51 L.Ed.2d 480 (1977), *quoting Superintendent of Insurance v. Bankers Life & Cas. Co.*, 404 U.S. 6, 12–13, 92 S.Ct. 165, 169, 30 L.Ed.2d 128 (1971).

To state a claim for primary liability under section 10(b) and Rule 10b–5, the complaint must allege

1) the use of jurisdictional means 2) to implement a deceptive or manipulative practice (with the requisite scienter) 3) in connection with 4) the purchase or sale 5) of a security 6) causing 7) damages.

*Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1026 (6th Cir.1979), *quoted in M & B Contracting Corp. v. Dale*, 795 F.2d 531, 536 (6th Cir.1986). "A person undertaking to furnish information which contains a material misstatement or omission is a primary participant, so long as he or she is not so far removed from the transmission of the misleading information that liability would necessarily become vicarious." *Mercer v. Jaffe, Snider, Raitt and Heuer, P.C.*, 713 F.Supp. 1019, 1025 (W.D. Mich.1989), *citing SEC v. Washington County Utility District*, 676 F.2d 218, 223–24 (6th Cir.1982). A defendant may not be held primarily liable absent a showing of "direct participation in the deceit at issue." *Mercer*, 713 F.Supp. at 1025, *citing Moore v. Fenex, Inc.*, 809 F.2d 297, 305 (6th Cir. 1987).

A defendant may also be held secondarily liable as an "aider and abettor" of a violation of section 10(b) or Rule 10b–5 if

... "some other party has committed a securities law violation, if the accused party had general awareness that his role was part of an overall activity that is improper, and if the accused aider-abettor knowingly and substantially assisted the violation."

*Moore v. Fenex, Inc.,* 809 F.2d 297, 303 (6th Cir.1987),[3] (*quoting Washington County Utility District,* 676 F.2d at 224), *cert. denied sub nom. Moore v. Frost,* 483 U.S. 1006, 107 S.Ct. 3231, 97 L.Ed.2d 737 (1987).

Finally, conduct violates section 10(b) or Rule 10b–5, whether primarily or secondarily, only if it "can be fairly viewed as 'manipulative or deceptive' within the meaning of the statute." *Santa Fe Industries,* 430 U.S. at 474, 97 S.Ct. at 1301. The terms manipulative and deceptive "clearly connote[ ] intentional misconduct." *Hochfelder,* 425 U.S. at 201, 96 S.Ct. at 1384. *See also* n. 3, *supra.* Such misconduct must take the form of "deception, misrepresentation, or nondisclosure" to violate section 10(b) or Rule 10b–5. *Santa Fe Industries,* 430 U.S. at 476, 97 S.Ct. at 1302.

Plaintiffs' 10(b)/10b–5 claim is based on alleged misrepresentations and omissions in the two documents attached to the complaint as Exhibits B and C. Exhibit B is an informational document entitled "Professional Investors Fund, Inc." printed on "J. Miller & Associates, Ltd." stationery. Exhibit C is an "offering circular" for PIF. As noted above, plaintiffs allege that Paul Underwood was the vice-president and a director of PIF, as well as a vice-president of Underwood & Associates, Inc.; and that Underwood & Associates, Inc., promoted the offer and sale of PIF securities (Complaint, para. 6, 9).

In an affidavit filed with the court on May 7, 1990, Paul Underwood avers:

7. . . . I was not involved in the preparation of any of the documents attached to the Complaint nor had I ever met or been involved in the alleged sale to the Plaintiffs.

\* \* \* \* \* \*

9. I have a meritorious defense to this action, as explained to me by my attorney, in that:

\* \* \* \* \* \*

b. As to the second count I had no contact whatsoever with the Plaintiffs in this matter, represented nothing to them, did not know they had invested any money (if they have), was not in any way involved in the preparation of Exhibit B to the Complaint nor had I seen Exhibit B prior to the time the Summons and Complaint was served upon me.

c. I was not involved in the preparation of Exhibit C, the Offering Circular and, in fact, never saw the Offering Circular or its references to me prior to the time the Summons and Complaint was served upon me.

d. Even though I did agree that upon organization of the corporation, I would serve as a director and an officer thereof, I never in fact so served since I did not believe the corporation to have been organized prior to the time I terminated my association with John Miller.

e. I never attended any board meetings or took part in any discussions regarding the affairs of the corporation and I signed only one document as a director of the corporation (which authorized a loan between Mr. Miller as lender and the corporation as borrower to allow the corporation to pay its organizational costs); this document was mailed to me in the State of

**3.** The *Fenex* court went on to state:

As to the third requirement [regarding knowing and substantial assistance in the violation], the analysis required by this factor must be particularly exacting in cases involving non-disclosure. *Washington County,* 676 F.2d at 226. The plaintiffs must show that the silence of the accused aider and abettor 'was consciously intended to aid the securities law violation,' and must prove either a culpable state of mind, or conduct from which a culpable state of mind can be inferred. *Id.* 809 F.2d at 303–304. This caveat comports with the Supreme Court's holding that section 10(b) prohibits only securities law violations committed with scienter. *See Santa Fe Industries,* 430 U.S. at 473, 97 S.Ct. at 1301; *Hochfelder,* 425 U.S. at 206, 96 S.Ct. at 1385.

Virginia whereupon I signed it and returned it by mail.

Underwood argues that neither he nor his corporation could have defrauded plaintiffs with the requisite scienter given his averment that he had nothing to do with the offending documents and, indeed, had never seen them until served with the complaint.

Plaintiffs respond by asserting that "it still remains a question of fact ... as to the extent Defendant Underwood and Defendant [Underwood] Associates were involved with the entire scheme of the sale of the securities." Plaintiffs' only evidence of possible involvement by these defendants is a December 20, 1989, letter from Underwood to plaintiffs' counsel. In that letter, a copy of which is attached to plaintiffs' response as Exhibit C, Underwood stated:

> I did do some consulting for Mr. Miller. The consultant activities were limited to preliminary activities associated with the preparation of a market research paper, a sample media presentation, attending a preliminary review of a draft copy of an offering circular, selecting and purchasing business envelopes and letterheads....

Underwood also indicated that Miller paid him a total of $25,500 in consulting fees.

Plaintiffs argue that, based solely on these admissions, "a jury could assume Underwood ... played an active part in the securities scheme." The court disagrees. The "admissions" in the December 20, 1989, letter do not suggest that Underwood or his corporation were directly involved in preparing or distributing either of the allegedly fraudulent documents attached to the complaint. Underwood specifically denies that he ever had anything to do with either of these documents. He further avers that the only action he ever took as a director of PIF was to authorize a loan to the corporation for organizational expenses.

In responding to the instant motion, plaintiffs have not presented any evidence from which a reasonable jury could find that the Underwood defendants defrauded plaintiffs. Plaintiffs' only evidence, Under-

wood's letter, does not satisfy plaintiffs' burden under Fed.R.Civ.P. 56(e) to "set forth specific facts showing that there is a genuine issue for trial" as to the Underwood defendants' involvement in the allegedly fraudulent scheme. On this record, a reasonable jury could not possibly find defendants Paul Underwood or Underwood & Associates, Inc., liable to plaintiffs for securities fraud. Accordingly, the court shall grant summary judgment for these defendants on count 2.

*Conclusion*

For the reasons stated above,

IT IS ORDERED that the motion of defendants Paul Underwood and Underwood & Associates, Inc., for summary judgment is granted as to counts 1 and 2. The clerk shall enter judgment accordingly.

SO ORDERED.