Joanne LEONI, William H. Leoni, Lero Industries, Inc., a Michigan Corporation, Charles J. Rogers Construction Company, a Michigan Corporation, and Charles J. Rogers, Inc., a Michigan Corporation, Plaintiffs,

v.

Charles K. ROGERS, a/k/a Ron Rogers, Michael Gleeson, Daniel Organ, and Donald E. Schmaltz, and Paul Gusho, d/b/a Schmaltz & Company, Lawrence Rogers, Jointly and Severally, Defendants.

Civ. A. No. 80-74875.

United States District Court,
E.D. Michigan, S.D.

Dec. 23, 1985.

---

George R. Hamo, Flint, Mich., for plaintiffs.

Lee C. Patton, Detroit, Mich., for Gleeson.

Larry Donaldson, Detroit, Mich., for Donald Schmaltz and Paul Gusho.

## MEMORANDUM OPINION

SUHRHEINRICH, District Judge.

### Facts

Charles J. Rogers, Inc. (hereinafter Incorporated) and Charles J. Rogers Construction Company (hereinafter Construction) are Michigan corporations of which the founder, Charles J. Rogers, was the sole stockholder until his death. Mr. Rogers was also the chief operating officer of Incorporated, in Detroit, Michigan, while his son-in-law, defendant William Leoni (husband of daughter Joanne Leoni), served as chief operating manager of the Construction Company, in Flint, Michigan.

On the 1971 death of Charles J. Rogers his nine children succeeded to ownership of the stock in both companies. Charles K.

Rogers, son of the founder, assumed the presidency of both corporations, and various other heirs assumed positions as officers and directors of the corporations, but William Leoni continued to manage the Construction company in Flint.

By 1974, Incorporated had suffered such substantial losses that its banker was about to call in its loan, which would have resulted, *inter alia*, in loss of its bonded status. Thereupon, Leoni stepped in and obtained a loan commitment from a Flint bank to cover the exigency, but with the condition that all shareholders of both corporations form a voting trust, of which Leoni would become trustee. This was accomplished by August of 1974, after which Charles K. Rogers was relieved of the presidency of Incorporated by Leoni, who then assumed managerial responsibility for both corporations.

On May 20, 1975, an agreement was entered by which all stockholders (except William and Joanne Leoni) sold all of their stock in both corporations to the corporations or, in effect, to Leoni. This sale of stock led to the present action. Plaintiffs claim relief under § 10(b) of the Securities Exchange Act of 1934 and Section 17 of the Securities Act of 1933. Plaintiffs also allege violations of Michigan's Blue Sky laws and common law.

### Res Judicata, Collateral Estoppel, Bar

■ Defendants argue that these very same parties were involved in litigation before Judge Taylor involving issues arising out of the same facts in issue here. In Judge Taylor's case, the roles were reversed. For the most part, defendants therein are plaintiffs herein and vice versa. Because a final judgment was entered in Judge Taylor's case, defendants contend that the issues cannot be relitigated here. Further, defendants maintain that plaintiffs claims here should have been pleaded in the prior litigation as compulsory counterclaims. For these reasons, defendants argue, plaintiffs' complaint should be dismissed.

For the reasons stated below, defendants' contentions are rejected:

1. Plaintiffs herein requested consolidation with Judge Taylor's case and the requests were denied. It would be patently unfair to hold that plaintiffs cannot bring their claims now when their requests for consolidation in the earlier case were denied. This would deny them their day in Court.

2. There are plaintiffs involved in this case who were not present as defendants in the original case.

3. There are factual distinctions between the two cases. The original plaintiffs alleged that certain of the current plaintiffs failed to disclose knowledge of a forthcoming large judgment which was rendered and affirmed by the Michigan Supreme Court after the sale in issue. Here, plaintiffs allege, *inter alia*, the failure to disclose certain accounts payable by defendants herein. Because the factual bases differ, there has been no final judgment on the merits of this case.

4. As to the issue of collateral estoppel, defendants fail to disclose which issues were tried in the prior case which should be estopped here. Without such information, the Court can hardly invoke collateral estoppel. Further, in light of plaintiffs' attempts to consolidate the actions, invocation of collateral estoppel would be unjust.

For the aforesaid reasons, the Court finds that plaintiffs' complaint is barred neither by res judicata nor collateral estoppel.

### Sale of Business Doctrine

■ This case presents the extremely difficult issue of defining the term "security" for purposes of the Federal Securities Acts. The Acts themselves are of little value in defining the term. The Securities Act of 1933 defines "security", "unless the context otherwise requires", as

any note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust

certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing. 15 U.S.C. § 77b(1). For all intents and purposes, the Securities and Exchange Act of 1934 defines "security" the same way. *See* 15 U.S.C. § 78c(a)(10).

The problem has arisen because the Supreme Court has held that the fact something is labeled "stock" does not automatically mean that it is a "security" under the Securities Acts. *United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). *Forman* stated, "Congress intended the application of these statutes to turn on the economic realities underlying a transaction, and not on the name appended thereto." *Id.* at 849, 95 S.Ct. at 2059. This Court's role, then, is to determine the "economic realities" of the transaction in question.

■ The "economic reality" test for determining whether the transaction involves a "security", as defined in *Forman, Id.* at 852, 95 S.Ct. at 2060, involves three elements: (1) an investment in a common venture; (2) premised on a reasonable expectation of profits; (3) to be derived from the entrepreneurial or managerial efforts of others. Because plaintiff Leoni became the sole shareholder of the corporations and because he was the manager of the corporations, prong (3) of the test above is not met. Any profits were to be derived from

his own doing. Thus, the economic reality of this transaction is that it did not involve a "security" for purposes of the federal securities acts.

This comports with Congressional intent. The Securities Acts were meant to protect the passive investor and not one who purchases stock for purposes of control and management. Congress intended to protect the purchaser of stock who lacks the ability to make independent evaluations and who must rely upon the representations of the sellers of the securities. From this intention of Congress, there has arisen the "sale of business" doctrine. This doctrine holds that the purchase of an entire business by a single purchaser or a few purchasers is not a "security" transaction within the federal securities acts, even if it is accomplished by a sale of stock or other securities. This is because such people do not fall into the class of investors sought to be protected by Congress.

The doctrine is, by no means, universally accepted. The Supreme Court and the Sixth Circuit have never ruled on the issue and the other circuits are split.[1] This Court finds that when corporate stock is purchased to acquire ownership and control of a business, rather than as an investment in a corporation to be managed by others, the transaction falls outside the scope of the federal securities acts.

■ To make the determination whether a transaction is a passive investment or an acquisition of control, this Court adopts the factors outlined in *Colson v. Bertsch,* 586 F.Supp. 1289 (D.N.J.1984):

1) whether the purchaser intended to acquire control and to exercise it;

2) whether the purchaser actually exercised or had the power to exercise such

---

1. Cases holding in favor of the doctrine include *Sutter v. Groen,* 687 F.2d 197 (7th Cir.1982), *Canfield v. Rapp & Son, Inc.,* 654 F.2d 459 (7th Cir.1981), *Frederiksen v. Poloway,* 637 F.2d 1147 (7th Cir.), *cert. denied,* 451 U.S. 1017, 101 S.Ct. 3006, 69 L.Ed.2d 389 (1981), *Landreth Timber Co. v. Landreth,* 731 F.2d 1348 (9th Cir.1984), *Chandler v. Kew,* 691 F.2d 443 (10th Cir.1977), *King v. Walker,* 673 F.2d 342 (11th Cir.1982).

Cases holding against the doctrine include *Golden v. Garafalo,* 678 F.2d 1139 (2d Cir.1982), *Seagrave v. Vista Resources, Inc.,* 696 F.2d 227 (2d Cir.1982), *Coffin v. Polishing Machines, Inc.,* 596 F.2d 1202 (4th Cir.), *cert. denied,* 444 U.S. 868, 100 S.Ct. 142, 62 L.Ed.2d 92 (1979); *Daily v. Morgan,* 701 F.2d 496 (5th Cir.1983), *Cole v. PPG Industries, Inc.,* 680 F.2d 549, 555–56 (8th Cir.1982).

control and management after acquisition;

3) whether the purchases were made through negotiations as opposed to solely on the open market;

4) whether the purchaser utilized or had the opportunity to utilize legal and/or accounting services in seeking to acquire control; and

5) whether the purchaser had direct dealings with management or the owners.

In this case, all these factors dictate a finding that the transaction involved the acquisition of ownership, not a passive investment. Plaintiffs are not the persons intended to be protected by the securities laws. It is undisputed that Mr. Leoni intended to, and did, acquire control of the corporations. Mr. Leoni has operated the defendant corporations since the time of purchase. He purchased the shares through negotiations with the managers of the corporations. Indeed, Mr. Leoni himself was a manager of the corporations *prior* to the purchase. Mr. Leoni was, in no way, a passive investor requiring the protection of the federal securities laws. For these reasons, the Court concludes that there is no "security" involved as contemplated by the Federal Securities Acts. Thus, Counts I and V of plaintiffs' complaint are dismissed.

### Remand

All federal claims have been dismissed pursuant to this motion. The authority to retain jurisdiction of the pendent state claims is discretionary. The Court declines to retain jurisdiction, especially in light of the fact both parties request that the action be remanded. Because the parties all reside in Oakland County, the Court orders that this case be remanded to Oakland County Circuit Court. Because of the remanding of the case, this Court declines to decide the state law issues this motion raises.

An appropriate order in accord with this Memorandum Opinion will be entered.