Joanne LEONI, William Leoni, Lero Industries, Inc., a Michigan Corporation, Charles J. Rogers Construction Company, a Michigan Corporation, and Charles J. Rogers, Inc., a Michigan Corporation, Plaintiffs,

v.

Charles K. ROGERS a/k/a Ron Rogers, Michael Gleeson, Daniel Organ, Donald E. Schmaltz and Paul A. Gusho d/b/a Schmaltz & Company, and Lawrence Rogers, Jointly and Severally, Defendants.

Civ. A. No. 80–CV–74875–DT.

United States District Court,
E.D. Michigan, S.D.

July 13, 1989.

---

**9.** Response at 4.

George R. Hamo, Flint, Mich., for plaintiffs.

Lawrence R. Donaldson, Detroit, Mich., for defendants Donald E. Schmaltz and Paul Gusho, d/b/a Schmaltz & Co.

Lee C. Patton, Southfield, Mich., for defendant Gleeson.

Daniel Organ, Farmington Hills, Mich., in pro per.

Lawrence Rogers, Bloomfield, Mich., in pro per.

MEMORANDUM OPINION
AND ORDER

FRIEDMAN, District Judge.

On October 21, 1980, the instant lawsuit was filed by Joanne and William Leoni (hereinafter Leonis) and three corporations which the Leonis own, Lero Industries, Charles J. Rogers Construction Co. (hereinafter Construction Co.), and Charles J. Rogers, Inc. (hereinafter CJR Inc.). In the complaint, it is alleged that defendants Charles K. Rogers, Michael Gleeson, Daniel Organ, and Lawrence Rogers (hereinafter collectively referred to as the operating defendants), and Donald E. Schmaltz and Paul Gusho d/b/a Schmaltz & Co. (hereinafter Schmaltz & Co.) violated the federal securities laws embodied in section 17(a) of the Securities Act of 1933 (1933 Act), 15 U.S.C. sec. 77q(a), and section 10(b) of the Securities Exchange Act of 1934 (1934 Act), 15 U.S.C. sec. 78j(b), as well as Rule 10b–5 of the Securities and Exchange Commission (hereinafter SEC) and the Michigan blue sky laws. Various state law claims are also raised against the defendants.

The alleged securities violations arise out of a May 20, 1975 agreement between the Leonis and defendants Charles K. Rogers, Michael Gleeson, Daniel Organ, and Lawrence Rogers, among others. Pursuant to this agreement, all shareholders in CJR Inc. and Construction Co. except the Leonis sold their shares back to the corporations. Subsequent to this redemption agreement, on May 30, 1975, the former shareholders, the Leonis, CJR Inc., Construction Co., and the Michigan National Bank executed a mutual general release in which they agreed to release each other from all causes of action arising out of "any matter, act or transaction including, without limitation, any claim for failure to make full or complete disclosures of information relating to [CJR Inc.] and Construction Co[.], or for any other reason of any kind, nature or description arising prior to the date [of the mutual general release]."

At the time of the May 20, 1975 agreement, plaintiff William Leoni operated and managed both corporations. Mr. Leoni had managed Construction Co., which was located in Flint, Michigan, since well before Charles J. Rogers' death. He assumed management of CJR Inc., located in Detroit, Michigan, by August 1974 pursuant to a May 1974 agreement between himself and the directors and shareholders of CJR Inc. and Construction Co.[1] The May 1974 agreement also gave Mr. Leoni "full and complete management operating control" of CJR Inc. and Construction Co. "with complete authority over the operation of said Corporations." The agreement specifically defined "full and complete management control" as "carrying out responsibilities for completion of all contracts and [making] decisions as to the method of implementation of the general policies established by the Boards of Directors." Further, Mr. Leoni was given "the authority to do all things that he deems necessary, expedient and prudent in his judgment to the beneficial and profitable operation of [the] Corporations whether or not specifically set forth." Although the boards of directors of the two corporations were retained, this retention was pursuant to the explicit written provision that any action on the boards' parts which substantially affected Mr. Leoni's managerial authority constituted a breach of the May 1974 agreement.

The May 1974 agreement was reached in part due to the losses which CJR Inc. had suffered by 1974. These losses were substantial enough that CJR Inc.'s banker was close to calling in its loans. If the loans were called in, CJR Inc. would have lost its bonded status, thus making it ineligible for many construction projects. To forestall this serious consequence, Mr. Leoni obtained a loan from the Michigan National Bank in Flint.[2] The loan commitment was provided subject to the conditions that the shareholders of the corporations would

1. The officers and shareholders of CJR Inc. and Construction Co. at the time of the May 1974 agreement were the children of Charles J. Rogers and their spouses.

2. Mr. Leoni was a member of the board of the Michigan National Bank.

form a voting trust with Mr. Leoni as the trustee and that they would sign the May 1974 agreement. After formation of the voting trust, Charles K. Rogers, Charles J. Rogers' son, stepped down from the presidency of CJR Inc. The other officers of the two corporations also stepped down from their positions. Mr. Leoni thereafter had sole managerial responsibility for the two corporations.

As indicated above, the shareholders of the two corporations were the nine children of Charles J. Rogers, the founder of both corporations, and their spouses. At Mr. Rogers' death in 1971, his children and their spouses succeeded to ownership of the stock in the corporations. Notably, Joanne Leoni was one of Charles J. Rogers' daughters; William Leoni is her husband. The Rogers children, other than the Leonis, were the shareholders who sold their shares back to CJR Inc. and Construction Co. as capital stock. Following the redemption by the other Rogers children, only the Leonis held stock in the two corporations. The Leonis subsequently incorporated Lero Industries as a holding corporation for CJR Inc. and Construction Co.

This matter is presently before this Court subsequent to its remand from the Sixth Circuit Court of Appeals. The previous district court judge handling this case had dismissed it on jurisdictional grounds. *Leoni v. Rogers*, 636 F.Supp. 530 (E.D. Mich.1985), *vacated*, 815 F.2d 704 (6th Cir.

1987). Specifically, the previous judge held that the "sale of business" doctrine placed the transactions involving the CJR Inc. stock and the Construction Co. stock outside the scope of the federal securities laws. On this ground, the previous judge held that the lawsuit lacked a federal jurisdictional basis. The previous judge also dismissed the remaining pendent state claims.

After review of the record, the Sixth Circuit vacated the district judge's decision, remanding this case for consideration in light of *Landreth Timber Co. v. Landreth*, 471 U.S. 681, 105 S.Ct. 2297, 85 L.Ed.2d 692 (1985), and *Gould v. Rufenacht*, 471 U.S. 701, 105 S.Ct. 2308, 85 L.Ed.2d 708 (1985). *See Leoni v. Rogers*, 815 F.2d 704 (6th Cir.1987) (order vacating decision below). In those cases, the Supreme Court held that the "sale of business" doctrine was not applicable to sales transactions involving traditional stock possessing the usual characteristics of stock. Upon this Court's assumption of the federal bench in June of 1988, this remanded case was transferred to its docket. The Court now issues its opinion on the motions pending in this matter.

To properly orient the reader as to the claims made in this lawsuit, the Court shall outline those claims. The complaint, which has not been amended in the nearly nine years during which this case has been pending, consists of the following counts:

| COUNT | DEFENDANT(S) | VIOLATION ALLEGED |
| --- | --- | --- |
| Count I | All | Sec. 10(b), 1934 Act; SEC Rule 10b–5; and sec. 17, 1933 Act |
| Count II | Operating defendants | Michigan Uniform Securities Act, M.C.L.A. sec. 451.501 |
| Count III | Operating defendants | Common law fraudulent inducement |
| Count IV | Operating defendants | Common law good faith and fair dealing |
| Count V | All | Violation of duty to disclose contrary to sec. 10(b), 1934 Act; SEC Rule 10b–5; and sec. 17, 1933 Act |
| Count VI | Operating defendants | Negligent mismanagement of corporations |

No other claims or counterclaims have been asserted by the parties in this lawsuit.

There are currently three motions pending in this matter. These are defendant Schmaltz & Co.'s renewed motion for summary judgment, defendant Michael Gleeson's renewed motion for summary judgment, and defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ's renewed motion to dismiss.[3] Each of the defendants' motions shall be discussed separately below.

Defendants Schmaltz & Co. and Michael Gleeson have filed timely motions for summary judgment with the Court. These motions shall be fully considered. Additionally, because the Court received the letter indicating *in pro per* defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ were resubmitting their motion to dismiss to the Court on August 4, 1988, their motion to dismiss shall also be fully considered.

In accordance with the Court's scheduling order, defendants Schmaltz & Co. and Michael Gleeson have each filed briefs supplementing their motions. Although the Gleeson supplementary brief was submitted after the August 5, 1988 deadline for such briefs, its stated purpose was to present information which was previously unavailable. As such, the Court shall give the supplemental brief full consideration. Plaintiffs have also filed a supplemental brief with the Court, albeit well outside the time limitation imposed by the Court for supplemental briefs. There is no indication that the information contained in this brief was previously unavailable to the plaintiffs. In fact, the exhibits attached to the brief are composed of the appellant briefs which plaintiffs submitted in their earlier appeal, a newspaper clipping which was over four years old at the time of the brief's submission, and deposition testimony taken almost three years prior to the brief's filing date. None of these items adds in any way to the plaintiffs' argu-

ments in their earlier response. Despite defendants' vigorous objections to this brief due to its untimeliness and plaintiffs' failure to either submit reasons to the Court for the untimeliness of their supplemental brief or to seek leave of the Court for filing the brief, the Court shall consider the brief when ruling on the motions.

In addition to the motions, joinders have been filed by many of the defendants. Defendant Gleeson has joined the motions filed by defendant Schmaltz & Co. and the motion resubmitted by defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ. Defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ have joined the motions for summary judgment filed by both Mr. Gleeson and Schmaltz & Co. Since all defendants have joined in Schmaltz & Co.'s motion for summary judgment, that motion shall be discussed first.

### *Defendant Schmaltz & Co.'s Renewed Motion for Summary Judgment*

#### A. Summary Judgment Standard

Before examining the particulars of defendant Schmaltz & Co.'s motion, the standards to be utilized when ruling on motions for summary judgment shall be set forth. The standards which must be used in deciding these motions are clear. Pursuant to Fed.R.Civ.P. 56(c), summary judgment may be granted when there is no genuine issue of material fact. *Atlas Concrete Pipe, Inc. v. Roger J. Au & Sons, Inc.*, 668 F.2d 905, 908 (6th Cir.1982). Additionally, under Fed.R.Civ.P. 56(e), the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment. *Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The movant in a motion for summary judgment has the initial responsibility of informing the Court of the basis for the motion and demonstrating the absence of a

---

**3.** This motion was originally filed in this case before the previous district judge's dismissal was entered. Defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ, who are in pro per, have resubmitted the motion for the Court's consideration as indicated in the letter dated August 3, 1988 which was sent to this Court on their behalf.

genuine issue of material fact. Fed.R. Civ.P. 56(e). There is no express or implied requirement that the moving party support its motion with affidavits or similar materials negating the opponent's claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). If the non-movant cannot establish an essential element of his claim and summary judgment is appropriate, the movant is entitled to the entry of summary judgment as a matter of law. *Id.* Finally, the evidence of the non-movant is to be believed and all justifiable inferences are to be drawn in his favor. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *S.E.C. v. Blavin,* 760 F.2d 706, 710 (6th Cir.1985). These standards shall be applied in deciding the summary judgment motions currently pending before the Court.

B. Issues Involved in the Present Motion

In its motion for summary judgment, defendant Schmaltz & Co. contends that summary judgment must be granted in its favor on several grounds. First, Schmaltz & Co. contends that the May 20, 1975 agreement is beyond the scope of the federal securities laws. It is claimed that a fundamental element of a securities transaction does not exist in this case. Second, it is asserted that there is no private right of action under sec. 17(a) of the 1933 Act, 15 U.S.C. sec. 77q(a). Third, defendant asserts that, as an auditor of CJR Inc. and Construction Co. who was hired only by the shareholders other than the Leonis, it owed no duty to the Leonis to disclose any financial information regarding those corporations to the Leonis. Fourth, defendant Schmaltz & Co. contends that the Leonis and Lero Industries have no standing to sue under sec. 10(b) of the 1934 Act or SEC Rule 10b–5 since they did not participate in the sale of stock under the May 20, 1975 agreement. Fifth, Schmaltz & Co. asserts that it should be granted summary judgment on plaintiffs' sec. 10(b) fraud claim as the plaintiffs have not met the requirements of Fed.R.Civ.P. 9(b) for pleading fraud. Sixth, defendant asserts that sum-

mary judgment may appropriately be granted on plaintiffs' Michigan blue sky claim since there is no implied civil cause of action for violations of the Michigan Uniform Securities Act, M.C.L.A. sec. 451.501, *et seq.* Further, defendant contends that, even if a civil cause of action were available under the Michigan blue sky laws, plaintiffs would be barred from asserting such a claim by the statute of limitations. The supplemental brief which Schmaltz & Co. has submitted in support of their motion merely reiterates the arguments made in the motion.

In response to defendant Schmaltz & Co.'s motion, the plaintiffs contend that the transaction in this case is covered by the federal securities law and that there is a private right of action under sec. 17(a). Plaintiffs further claim that defendant Schmaltz & Co. owed a duty to the plaintiffs to disclose financial information regarding CJR Inc. and Construction Co. It is also claimed that plaintiffs have adequately pled fraud in their complaint. Finally, plaintiffs concede that their claims under the Michigan Uniform Securities Act must be dismissed as there is no civil cause of action under that act and because such a claim would be time-barred. In accordance with the plaintiffs' concessions, their claims under the Michigan Uniform Securities Act, embodied in Count II of the complaint, shall be dismissed. The arguments raised in plaintiffs' supplemental brief reprise their earlier arguments.

C. Private Right of Action Under Sec. 17(a)

Prior to addressing the issue of whether the federal securities laws apply to the present case, the Court shall consider whether the plaintiffs can properly bring a claim under sec. 17(a) of the 1933 Act. That is, does any private right of action exist under sec. 17(a) of the 1933 Act? Absent such a right of action, plaintiffs' sec. 17(a) claims must be dismissed.

In its motion for summary judgment, defendant Schmaltz & Co. argues that there is no private right of action under sec. 17(a) of the 1933 Act. Defendant al-

leges that the terms of sec. 17(a) do not explicitly provide for such a private right of action. However, defendant does recognize that it is an open issue whether an implied private right of action exists under sec. 17(a). Although acknowledging that the Sixth Circuit has yet to rule on the issue, defendant submits that *Gilbert Family Partnership v. Nido Corp.*, 679 F.Supp. 679 (E.D.Mich.1988), and an unreported decision from this district, *Hanimax, Inc. v. Baia*, Civil Action No. 78–17017 (E.D.Mich. September 28, 1978) (order granting dismissal), found that there was no private right of action under sec. 17(a). Additionally, defendants assert that, in another context, the Sixth Circuit has expressed uncertainty regarding the existence of implied private rights of action. *See Rauchman v. Mobil Corp.*, 739 F.2d 205, 207 (6th Cir.1984). On these bases, defendant seeks summary judgment on Count V of the plaintiffs' complaint.

The plaintiffs claim that there is a private right of action under sec. 17(a). In support of their claims, the plaintiffs assert that the Supreme Court has recognized other implied private rights of action, including that under sec. 10(b) of the 1934 Act. Finally, the plaintiffs contend that a decision from this district, *Doll v. James Martin Associates*, 600 F.Supp. 510 (E.D.Mich. 1984), recognized the existence of an implied private right of action under sec. 17(a). Accordingly, the plaintiffs seek the denial of defendants' summary judgment motion as to this issue.

No authoritative case law exists on the question of whether there is an implied private right of action under sec. 17(a) of the 1933 Act. The Supreme Court has expressly reserved this question, *Herman & MacLean v. Huddleston*, 459 U.S. 375, 378 n. 2, 103 S.Ct. 683, 685 n. 2, 74 L.Ed.2d 548; *International Brotherhood of Teamsters v. Daniel*, 439 U.S. 551, 557 n. 9, 99 S.Ct. 790, 795 n. 9, 58 L.Ed.2d 808 and the Sixth Circuit has yet to rule on the issue. Further, there is a split among the circuits which have given consideration to this question.[4] However, the tendency of recent cases is to hold that no private right of action exists under sec. 17(a). For example, the Ninth Circuit's holding in *In re Washington Public Power Supply System Securities Litigation [In re WPPPS]*, 823 F.2d 1349 (9th Cir.1987), that there was no implied private right of action under sec. 17(a) explicitly overruled two earlier Ninth Circuit cases which found that there was such a private right of action. *See id.* at 1350–52, *overruling Mosher v. Kane*, 784 F.2d 1385 (9th Cir.1986), and *Stephenson v. Calpine Conifers II, Ltd.*, 652 F.2d 808, 815 (9th Cir.1981).

The trend in the circuits toward finding that sec. 17(a) does not accord a private right of action is amply noted in *Gilbert Family Partnership*, 679 F.Supp. at 687–89. The Court finds the conclusions reached in *Gilbert Family Partnership* to be correct in all aspects. The present Court agrees with the *Gilbert Family Partnership* court that:

> As is inescapable from its review of current law, this Court concludes that [finding a private right of action under sec. 17(a)] has all but reached the end of its

4. As this Court's research indicates, the Fourth Circuit, Fifth Circuit, Eighth Circuit, Ninth Circuit, and Eleventh Circuit do not recognize a private right of action under sec. 17(a) of the 1933 Act. *See Newcome v. Esrey*, 862 F.2d 1099 (4th Cir.1988); *Landry v. All American Assurance Co.*, 688 F.2d 381 (5th Cir.1982); *Deviries v. Prudential-Bache Securities, Inc.*, 805 F.2d 326 (8th Cir.1986); *Roberts v. Peat, Marwick, Mitchell & Co.*, 857 F.2d 646 (9th Cir.1988); *Currie v. Cayman Resources Corp.*, 835 F.2d 780 (11th Cir.1988). Of the remaining circuits, the Second Circuit, Seventh Circuit, and Tenth Circuit have expressed some modicum of doubt that a private right of action exists under sec. 17(a), although the Second Circuit has not repudiated an earlier decision finding that there was a private right of action. *See Yoder v. Orthomolecular Nutrition Institute, Inc.*, 751 F.2d 555, 559 n. 3 (2nd Cir.1985); *Teamsters Local 282 Pension Trust Fund v. Angelos*, 762 F.2d 522, 530–31 (7th Cir.1985); *Ohio v. Peterson, Lowry, Rall, Barber & Ross*, 651 F.2d 687, 689 n. 1 (10th Cir.1981). The First Circuit has yet to decide the issue, *see Wayne Investment, Inc. v. Gulf Oil Corp.*, 739 F.2d 11 (1st Cir.1984) (declining to decide 17(a) private right of action issue when appellants did not challenge the district court's holding that there was no sec. 17(a) private right of action). Finally, the District of Columbia Circuit, Third Circuit, and Sixth Circuit have yet to rule on the issue.

life in the federal courts. After evaluating the decision in *In re WPPPS*, this Court now declines to place itself in the dwindling minority of federal courts [finding such a right of action].

*Id.* at 688–89. Thus, the Court finds that there is no implied private right of action under sec. 17(a) of the 1933 Act. Defendant Schmaltz & Co.'s motion for summary judgment shall be granted as to Counts I and V of the complaint to the extent that sec. 17(a) is recited as a basis for plaintiffs' claims. Notably, after the grant of summary judgment on the sec. 17(a) issue, the only federal claims remaining are plaintiffs' 1934 Act claims under sec. 10(b) and Rule 10b–5. Accordingly, the federal issues raised in Schmaltz & Co.'s motion shall only be discussed with regard to the plaintiffs' claims under the 1934 Act.

D. Applicability of 1934 Act to 1975 Agreement

With regard to the applicability of the 1934 Act to the instant case, defendant Schmaltz & Co. makes the following argument:

> This case involves the redemption sale of stock which leaves the chief operating officer and manager of the corporations, and his wife, the sole shareholders of the corporations. This is a purchase of stock by a party who is, or should have been, well acquainted with the financial status of the corporations because of his role as operating manager of both corporations. This case does not involve an investor who is not involved with any of the management of the corporation *prior* to the sale of stock. It is the involvement of William Leoni with the corporation *prior* to the sale of stock which distinguishes this case from a typical sale of stock transaction. This case does not involve a "security" within the meaning of the Securities Acts of 1933 and 1934.

On careful consideration of the defendant's statement, it is apparent that two separate arguments are being made. These are: (1) for the purposes of the 1934 Act, no security is involved in the present case; and (2) the transaction which occurred is not within the coverage of the 1934 Act under any circumstances. These arguments shall be discussed separately below.

The issue of what constitutes a security under the 1933 and 1934 Acts has been the subject of several recent Supreme Court rulings. *See Landreth, supra; Gould, supra; United Housing Foundation, Inc. v. Forman,* 421 U.S. 837, 95 S.Ct. 2051, 44 L.Ed.2d 621 (1975). These opinions carefully analyze what constitutes a security. As they indicate, the language of the 1933 and 1934 Acts is the starting point in determining whether a security exists. *See, i.e., Landreth, supra* 471 U.S. at 685, 105 S.Ct. at 2301.

The 1933 Act and the 1934 Act define "security" in virtually identical ways. *See Landreth,* 471 U.S. at 686 n. 1, 105 S.Ct. at 2301 n. 1; *Forman,* 421 U.S. at 847 n. 12, 95 S.Ct. at 2058 n. 12; *Deckebach v. LaVida Charters, Inc.,* 867 F.2d 278, 281 (6th Cir.1989). As set forth in the 1933 Act, the term "security" means:

> [A]ny note, stock, treasury stock, bond, debenture, evidence of indebtedness, certificate of interest or participation in any profit-sharing agreement, collateral-trust certificate, preorganization certificate or subscription, transferable share, investment contract, voting-trust certificate, certificate of deposit for a security, fractional undivided interest in oil, gas, or other mineral rights, or, in general, any interest or instrument commonly known as a "security", or any certificate of interest or participation in, temporary or interim certificate for, receipt for, guarantee of, or warrant or right to subscribe to or purchase, any of the foregoing.

Sec. 2(1), 1933 Act, 15 U.S.C. sec. 77b(1).

In the present case, CJR Inc. and Construction Co. redeemed their stock from all the shareholders other than the Leonis. Defendant contends that this transaction does not involve a security for the purposes of the 1934 Act. As noted by all parties to this case, not all instruments labelled "stock" come within the coverage of federal securities laws. *Forman,* 421 U.S. at 851, 95 S.Ct. at 2060. However, if instruments labelled "stock" possess the

usual characteristics of stock, then it may be assumed that the federal securities laws apply. *Id.* at 850, 95 S.Ct. at 2059; *Landreth*, 471 U.S. at 693, 105 S.Ct. at 2305. As identified by the Supreme Court, there are five usual characteristics of stock:

(1) The right to receive dividends contingent upon an apportionment of profits;

(2) Negotiability;

(3) Ability to be pledged or hypothecated;

(4) The conferring of voting rights in proportion to the number of shares owned; and

(5) The capacity to appreciate in value.

*Forman*, 421 U.S. at 851, 95 S.Ct. at 2060.

Defendant Schmaltz & Co. does not argue that the CJR Inc. and Construction Co. stock do not possess the usual characteristics of stock. Rather, defendant contends that although the stock appears to fall within the letter of the federal securities laws, it is not within the spirit of those laws. As set forth above, defendant's argument is based on the fact that William Leonis managed the two corporations prior to the redemptions. On this basis, Schmaltz & Co. contends that *Gould* and *Landreth* are not dispositive of the federal securities issues in this case.

■ This argument seems to merely reprise the issues decided by the Supreme Court in *Landreth* and *Gould*. Those opinions clearly establish that stock which bears the usual characteristics of stock is a security for purposes of the 1933 and 1934 Acts. This Court finds defendant's arguments that a security is not involved in the present case unpersuasive in light of defendant's admission that the CJR Inc. and Construction Co. stock fall within the letter of the federal securities laws. There is no necessity for the Court to apply the "economic realities" test as set forth in *S.E.C. v. W.J. Howey Co.*, 328 U.S. 293, 66 S.Ct. 1100, 90 L.Ed. 1244 (1946), under these circumstances. *See Sulkow v. Crosstown Apparel Inc.*, 807 F.2d 33, 36–37 (2nd Cir. 1986); *Schaafsma v. Morin Vermont Corp.*, 802 F.2d 629, 636–37 (2nd Cir.1986). The Court holds that the redemption transaction in the instant case involved a security as that term is defined by *Gould* and *Landreth*.

■ The *Gould* decision also rejected the sale of business doctrine as a rule of decision in cases which involve the sale of traditional stock in a closely held corporation. 471 U.S. at 704, 105 S.Ct. at 2310. Since the present case clearly involves the sale of traditional stock in a close corporation, it is apparent that the sale of business doctrine cannot be applied.[5]

However, defendant Schmaltz & Co. also supplies further reasons why a security for purposes of the 1933 and 1934 Acts is not involved in the present case. First, defendant contends that the stock transaction did not involve a security sold in interstate commerce. It is alleged that the stock

---

5. Although the Court is constrained by the holdings in *Gould* and *Landreth* to find that the sale of business doctrine does not apply to the instant case, the Court feels compelled to comment that the circumstances of this case make a strong argument for application of the sale of business doctrine. The facts of this case demonstrate that Mr. Leoni had full and complete management and operating control of both corporations at the time of the redemption agreement. Following the redemption, which left the Leonis with full ownership of both corporations as the holders of the only nonredeemed stock, the Leonis possessed full ownership and management control of the corporations. The policy reasons supplied by the Supreme Court in its rejection of the sale of business doctrine in *Gould* and *Landreth* do not apply under these conditions. Specifically, total control of the corporations passed when the redemption occurred. Additionally, Mr. Leoni retained full management control of the corporations. These facts are undisputed and have required no discovery or litigation beyond the initial pleadings. Thus, at the time of the redemption transaction, it was very apparent that, were the sale of business doctrine viable, it would apply to the redemption transaction involved so as to make the transaction outside the 1933 and 1934 Acts. Finally, the Court notes that the 1933 and 1934 Acts' purpose of protecting investors is of dubious application to the present case. As Mr. Leoni had management control of both firms for approximately nine months prior to the date of the redemption, he had access to all information regarding the financial status of the corporations. Under such circumstances, it is questionable that the Leonis were investors who required the protection of the federal securities laws.

involved was that of two Michigan close corporations which was initially sold only to Michigan residents. No brokers or public exchange were involved. Second, Schmaltz & Co. asserts that the sale involved only a redemption of stock by the corporation. For these reasons, Schmaltz & Co. contends that the transaction involved in the instant case was purely intrastate and not governed by the federal securities laws.

Defendant's argument apparently refers to the exemption to federal securities laws set forth in sec. 3(a)(11) of the 1933 Act, 15 U.S.C. sec. 77c(a)(11). That statute exempts:

> Any security which is part of an issue offered and sold only to persons resident within a single State or Territory, where the issuer of such security is a person resident and doing business within or, if a corporation, incorporated by and doing business within, such State or Territory.

This exemption from securities registration must be construed narrowly, and the burden of proving that the exemption has been met is on the person claiming the exemption. *Sorrell v. S.E.C.*, 679 F.2d 1323 (9th Cir.1982); *S.E.C. v. Aaron*, 605 F.2d 612 (2d Cir.1979).

In a release addressing sec. 3(a)(11), the SEC clarified the meaning of the exemption:

> [T]he fact should be stressed that Section 3(a)(11) is designed to apply only to distributions genuinely local in character. From a practical point of view, the provisions of that section can exempt only issues which in reality represent local financing by local industries, carried out through local investments. Any distribution not of this type raises a serious question as to the availability of Section 3(a)(11).

Section 3(a)(11) Exemption for Local Offerings, Securities Act Release No. 4434, [Topical Index Securities Act] Fed.Sec.L.Rep. (CCH) paras. 2270–77 (December 6, 1961)

[hereinafter Release 4434]. In a 1974 release, the SEC further clarified the intrastate issue exemption. The SEC adopted Rule 147 in that release, reasoning that "local businesses seeking financing should have objective standards to facilitate compliance with Section 3(a)(11) and the registration provisions of the Act, and that rule will enable such businesses to determine with more certainty whether they may use the exemption in offering their securities." Notice of Adoption of Rule 147, Securities Act Release No. 5450, [Topical Index Securities Act] Fed.Sec.L.Rep. (CCH) para. 2340 (January 7, 1974) [hereinafter Release 5450].

■ Notably, section 3(a)(11) only exempts securities from the registration and prospectus requirements of the 1933 Act. *See* Release 4434. As set forth in Release 5450,

> Neither Section 3(a)(11) nor Rule 147 provides an exemption from the civil liability provisions of Section 12(2) of the Act, the anti-fraud provisions of the Act or of the Securities Exchange Act of 1934 ("Exchange Act"), the registration and periodic reporting provisions of Section 12(g) and 13 of the Exchange Act, or any applicable state laws.

As sec. 10(b) of the 1934 Act is an anti-fraud provision, section 3(a)(11) cannot provide an exemption to sec. 10(b). Accordingly, the defendant's invocation of sec. 3(a)(11) is without merit under the facts of this lawsuit.[6]

Additionally, the fact that a redemption of stock was involved in the present case is insufficient to take this case outside the coverage of the federal securities law. Such a redemption transaction is a sale of a security under the 1933 and 1934 Acts which is within the scope of sec. 10(b). *See Drachman v. Harvey*, 453 F.2d 722, 737 n. 2 (2d Cir.1972) (redemption of convertible debentures in order to prevent conversions and dilution of voting control is a purchase

---

**6.** The Court also notes that the defendant has not shown that sec. 3(a)(11)'s requirements have been met. Specifically, the defendant must demonstrate that the initial sale of CJR Inc. and Construction Co. stock was within a single state

or that the issuer of the stock was resident in the same state or doing business in the same state. *Chapman v. Dunn*, 414 F.2d 153 (6th Cir.1969). For this reason as well, defendant's sec. 3(a)(11) argument fails.

which may be actionable under sec. 10(b)); *Goldberger v. Baker*, 442 F.Supp. 659 (S.D.N.Y.1977) (redemption of junior preferred stock is a purchase which could give rise to Rule 10b–5 liability). *See also Green v. Hamilton International Corp.*, 437 F.Supp. 723 (S.D.N.Y.1977). Thus, the Court determines that summary judgment cannot be granted for the defendants on this issue.

For the reasons set forth above, the Court concludes that the 1934 Act, and specifically sec. 10(b) of that act and SEC Rule 10b–5, may be applicable to the present case. Defendant Schmaltz & Co.'s renewed motion must be denied to the extent that it argues otherwise.

### E. Did Schmaltz & Co. Owe a Duty to the Plaintiffs?

Schmaltz & Co. next argues that it owed no duty to disclose financial information regarding CJR Inc. and Construction Co. to the Leonis as it was hired only by the shareholders other than the Leonis. Additionally, Schmaltz & Co. alleges that the Leonis did not rely upon its representations in purchasing CJR Inc. and Construction Co. Absent a duty to disclose, Schmaltz & Co. claims that it cannot be held liable for violations of the 1933 and 1934 Acts.

In Count V of the complaint, the plaintiffs aver that Schmaltz & Co. did owe a duty to them. In their response to the instant motion, plaintiffs assert that their claims against Schmaltz & Co. are based upon their allegations in the complaint that the accounting firm performed services for CJR Inc. and Construction Co. It is alleged that these services amounted to an investigation of the companies' financial condition. Plaintiffs contend that, although all of the other shareholders were informed of the financial status of the companies, they were not so informed even though they were also shareholders. Summed up, plaintiffs contend that, because they were shareholders, Schmaltz & Co. owed them a duty to disclose the financial status of the companies.

■ A duty to disclose material information in connection with the purchase or sale of securities arises only from the relationship between the parties and not merely because one party has an ability to acquire certain information. *Windon Third Oil & Gas v. Federal Deposit Insurance Corporation*, 805 F.2d 342, 347 (10th Cir.1986). The relationship must be a fiduciary relationship or another similar relationship of trust and confidence between the parties. *Chiarella v. United States*, 445 U.S. 222, 228, 100 S.Ct. 1108, 1114, 63 L.Ed.2d 348 (1980); *Dirks v. SEC*, 463 U.S. 646, 654, 103 S.Ct. 3255, 3261, 77 L.Ed.2d 911 (1983). If there is no fiduciary relationship between the parties, then no duty to disclose exists, and one party's failure to supply another party with material information is not actionable under sec. 10(b) and Rule 10b–5. *Windon, supra*. And, it has been established that silence, absent a duty to disclose, is not misleading under Rule 10b–5. *Basic Inc. v. Levinson*, 485 U.S. 224, 108 S.Ct. 978, 99 L.Ed.2d 194 (1988).

■ After review of the facts and the exhibits submitted by both sides, the Court finds that summary judgment must be granted for defendant Schmaltz & Co. on this issue. From the exhibits, it is patently clear that Schmaltz & Co. was never hired by CJR Inc. and Construction Co. as an auditor, despite hopes that Schmaltz & Co. might be so employed. In fact, even though Schmaltz & Co. was the choice of all the shareholders other than the Leonis as the companies' auditor, the Michigan National Bank rejected Schmaltz & Co. as the auditor. As bank approval was needed before an auditor could be hired, Schmaltz & Co. was never hired by the corporations to perform an audit; one of the "big eight" accounting firms was instead hired. Also, as indicated by the deposition of Thomas Lewand, although Schmaltz & Co. attempted to perform an audit of the companies before it was rejected by Michigan National Bank, the audit never came to fruition. Initially, this was due to the corporations' lack of cooperation; later, this was due to the bank's rejection. In addition, the letter of release dated May 3, 1978 from Rene J. Ortlieb, who was then counsel for the Leonis, states that neither "C.J. Rogers" or

William Leoni employed Schmaltz & Co.[7] As the letter also indicates, "C.J. Rogers" paid Schmaltz & Co.'s fees only due to an agreement which was reached between the buyers and sellers of the companies' stock. Finally, the Court finds convincing Schmaltz & Co.'s argument that it was precluded by a Michigan statute, M.C.L.A. sec. 339.713, from disclosing the sought-after information to the non-client plaintiffs. The above factors conclusively show that there was no fiduciary relationship between Schmaltz & Co. and the plaintiffs. Schmaltz & Co. therefore owed no duty to disclose to the plaintiffs. Since there was no duty for Schmaltz & Co. to disclose, its silence cannot be misleading under Rule 10b–5.

■ The Court also notes that many of the plaintiffs' assertions regarding Schmaltz & Co. appear bear on a state accounting malpractice claim instead of a sec. 10(b) or Rule 10b–5 action. For example, the plaintiffs mention the common law duties of accountants at several points. Although a breach of those duties may lead to a misrepresentation which is actionable under sec. 10(b) or Rule 10b–5, a plaintiff may not bootstrap such a claim into a federal securities claim merely because a breach has occurred. *C.F. Kas v. Financial General Bankshares, Inc.,* 796 F.2d 508, 513 (D.C.Cir.1986). Rather, the existence of a fiduciary relationship is an essential element of a duty to disclose claim under sec. 10(b) or Rule 10b–5, as set forth above. Plaintiffs' arguments regarding the duties of accountants, as presented in the deposition testimony of Wray Bradley in their original and supplemental briefs, are of no avail absent a showing that there was a duty to disclose.

Finally, Thomas Lewand's deposition testimony supplies a further reason for finding no liability on Schmaltz & Co.'s part. Mr. Lewand was the attorney hired by the shareholders during the 1975 stock sale negotiations. In his deposition, Mr. Lewand testified that he was present when plaintiff William Leoni discussed the alleged $446,000.00 in undisclosed liabilities owed by CJR, Inc. prior to the sale of the stock. Also, Mr. Lewand testified that Mr. Leoni was present at meetings prior to the sale of the stock when the $446,000.00 in understated accounts payable was discussed. Finally, as indicated during Mr. Lewand's deposition, Construction Co.'s financial statement for the year ending on December 30, 1974, prepared by Construction Co.'s accountant Frank Couture, included a footnote which referenced the $446,000.00 in undisclosed liabilities. That footnote read:

As a result of the joint venture agreement with Charles J. Rogers, Inc., the company incurred expenses during the year ending September 30, 1974 of $446,-116.59 which were charged to operations for the year.

Mr. Lewand testified that this financial statement was the last set of financials prepared prior to the stock sale, and that it was distributed to "all of us," including Mr. Leoni.

On the basis of Mr. Lewand's testimony, which is uncontroverted by anything plaintiffs have filed, the Court can only conclude that Mr. Leoni had knowledge of the understated accounts payable. This conclusion is bolstered by the deposition testimony of Lynn Pfieffer, who acted as treasurer of CJR, Inc. after Daniel Organ was removed from office, and Helen Erla, the bookkeeper for the companies. Ms Erla testified that, from the time he assumed management of CJR, Inc., Mr. Leoni had full access to the corporate books which reflected the approximately $400,000.00 owed for accounts payable. And, Mr. Pfieffer stated that Mr. Leoni had discussed the $446,-000.00 with him at some point within two months of October 1974. Plaintiffs have offered nothing in opposition to these depositions. The duty to disclose cannot be implicated under these circumstances. "The duty to disclose presupposes the lack of complete information between [parties]

---

7. The Ortlieb letter's use of "C.J. Rogers" is an apparent reference to either CJR, Inc. or Construction Co., or both. From the text of the letter, the Court is unable to determine to which company or companies Mr. Ortlieb refers.

and seeks to provide a remedy to those who enter into transactions without the benefit of all relevant information available to the other party." *Rodriguez v. Montalvo,* 649 F.Supp. 1169, 1174–75 (D.P.R.1986). Since Mr. Leoni was in control of the corporations prior to the stock sale and possessed the relevant information regarding the accounts payable, he had no lack of complete information about the accounts payable. Accordingly, Mr. Leoni was as much of an insider as the defendants; no duty to disclose was owed to Mr. Leoni under these conditions. *See Dirks, supra* at 653–54, 103 S.Ct. at 3260–61.

For the reasons discussed above, the Court finds that summary judgment must be granted for Schmaltz & Co. on Count V of the complaint.

### F. Do the Leonis and Lero Industries Have Standing to Sue?

In its next argument, Schmaltz & Co. avers that plaintiffs William and Joanne Leoni and Lero Industries do not have standing to pursue a sec. 10(b) or Rule 10b–5 action. It is claimed that William and Joanne Leoni and Lero Industries lack standing because they were not parties to the stock purchase/sale transaction. It is asserted that Lero Industries' lack of standing is further shown by the fact that Lero Industries was not created as a holding company until after the purchase/sale transaction occurred.

In response, the plaintiffs allege that the money utilized by CJR, Inc. and Construction Co. to purchase the stock back from the other shareholders came from William and Joanne Leoni. Further, plaintiffs allege that the defendants were aware that Lero Industries would be receiving the stock as a holding company. On this basis, the plaintiffs aver that William and Joanne Leoni and Lero Industries have standing because they have a personal stake in the outcome of the present controversy.

After perusal of the pertinent case law, the Court is of the opinion that summary judgment must be granted for the defendants on this issue as well. In *Blue Chip Stamps v. Manor Drug Stores,* 421

U.S. 723, 95 S.Ct. 1917, 44 L.Ed.2d 539 (1975), the Supreme Court unequivocally held that only actual purchasers and sellers could pursue actions under Rule 10b–5 and sec. 10(b). The *Blue Chip Stamps* ruling adopted the Second Circuit's holding in *Birnbaum v. Newport Steel Corp.,* 193 F.2d 461 (2nd Cir.), *cert. denied,* 343 U.S. 956, 72 S.Ct. 1051, 96 L.Ed. 1356 (1952). Under the *Birnbaum* rule, "[t]hree principal classes of potential plaintiffs are ... barred," 421 U.S. at 737, 95 S.Ct. at 1926.

> First are potential purchasers of shares, either in a new offering or on the Nation's post-distribution trading markets, who allege that they decided not to purchase because of an unduly gloomy representation or the omission of favorable material which made the issuer appear to be a less favorable investment vehicle than it actually was. Second are actual shareholders in the issuer who allege that they decided not to sell their shares because of an unduly rosy representation or a failure to disclose unfavorable material. Third are shareholders, creditors, and perhaps others related to an issuer who suffered loss in the value of their investment due to corporate or insider activities in connection with the purchase or sale of securities which violate Rule 10b–5.

421 U.S. at 737–38, 95 S.Ct. at 1926. The Supreme Court indicated that the second and third *Birnbaum* classes would frequently be able to circumvent the limitations imposed by *Birnbaum* "through bringing a derivative action on behalf of the corporate issuer if the latter is itself a purchaser or seller of securities." *Id.* at 738, 95 S.Ct. at 1926.

In the present case, this Court finds that plaintiffs William and Joanne Leoni fit within the third *Birnbaum* limitation. However, despite the potential under the third limitation for circumventing *Birnbaum* by bringing a derivative action, the Leonis have not brought such an action. Rather, the Leonis have sought compensation for themselves separate from that sought by CJR, Inc., Construction Co., and Lero Industries for the defendants' allegedly fraudulent activities. Under these cir-

cumstances, the Leonis are prevented from bringing a Rule 10b–5 or sec. 10(b) action against the defendants by the *Birnbaum* rule.

■ The Court also finds that Lero Industries does not have standing to bring a Rule 10b–5 or sec. 10(b) action against the defendants. Lero Industries was neither a purchaser or seller of the securities involved, coming into existence only to hold the securities on the purchase/sale transaction occurred. These facts indicate that Lero Industries is "a putative plaintiff, who neither purchases nor sells securities but sues instead for intangible economic injury." *Blue Chip Stamps*, 421 U.S. at 734, 95 S.Ct. at 1925. Since Lero Industries was not a purchaser or seller, any recovery for it would be "largely conjectural and speculative," *id.* at 735, 95 S.Ct. at 1925. There is no justification for implying a cause of action under Rule 10b–5 for Lero Industries under these circumstances. *Id.* Accordingly, the Court holds that Lero Industries does not have standing to bring a Rule 10b–5 or sec. 10(b) action against the defendants.

For the reasons set forth, plaintiffs Joanne Leoni, William Leoni, and Lero Industries do not have standing to pursue Rule 10b–5 or sec. 10(b) actions against the defendants. Summary judgment must accordingly be granted for the defendants on Count I of the complaint inasmuch as that count is brought on Joanne Leoni, William Leoni, and Lero Industries' behalf. Additionally, lack of standing is an alternative reason for granting summary judgment for Schmaltz & Co. as to the Leonis and Lero Industries on Count V of the complaint.

**G. Can Plaintiffs' Rule 10b–5 Claim Be Dismissed Under Fed.R.Civ.P. 9 for Failure to Plead Fraud with Particularity?**

The final argument made by Schmaltz & Co. is that the plaintiffs have failed to plead securities fraud with particularity as they are required to do under Fed.R.Civ.P. 9(b). It is asserted that the plaintiffs have merely conclusorily alleged that the defendants engaged in securities fraud without particularizing the facts constituting the fraud. Thus, Schmaltz & Co. avers that plaintiffs' fraud allegations must be dismissed under Fed.R.Civ.P. 9(b).

In response, the plaintiffs claim that Fed.R.Civ.P. 9(b) does not require that they plead all evidence in support of their claim, but only such evidence as is needed to assure the Court that the claim has some basis in fact. The plaintiffs also state that they have delineated among the defendants as to their participation and responsibilities in the activities allegedly constituting securities fraud. Therefore, the plaintiffs ask that the Court deny Schmaltz & Co.'s motion as to this issue.

Pursuant to Fed.R.Civ.P. 9(b),

In all averments of fraud or mistake, the circumstances constituting the fraud shall be stated with particularity. Malice, intent, knowledge, and other condition of mind of a person may be averred generally.

The requirements set forth in Fed.R.Civ.P. 9(b) are special pleading requirements. As such, they are contrary to the "general approach of simplified pleading adopted by the federal rules." 5 C. Wright & A. Miller, *Federal Practice and Procedure* sec. 1297 (1969 and Supp.1987). The Sixth Circuit has stated that a plaintiff claiming fraud must at a minimum allege the time, place, and content of the alleged misrepresentation on which they relied. *Bender v. Southland Corp.*, 749 F.2d 1205, 1216 (6th Cir.1984). The identity of the person making the alleged misrepresentations must also be given, as well as what that person gained by the misrepresentation. 5 C. Wright & A. Miller, *supra; Seattle–First National Bank v. Carlstedt*, 800 F.2d 1008, 1011 (10th Cir.1986). Additionally, a plaintiff must allege intent to defraud. *Bender, supra. C.f. Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (some element of scienter is necessary in order to maintain an action under sec. 10(b) or Rule 10b–5). These allegations are necessary to apprise defendants of the claims against them and of the acts relied upon as constituting the fraud. 5 C. Wright & A. Miller,

*supra; Hayduk v. Lanna,* 775 F.2d 441, 443 (1st Cir.1985); *Benoay v. Decker,* 517 F.Supp. 490, 492–94 (E.D.Michigan 1981), *aff'd without opinion,* 735 F.2d 1363 (6th Cir.1984). Notably, failure to state fraud with particularity constitutes failure to state a claim. *Benoay, supra* at 494. Thus, a complaint may be dismissed for failure to state a claim if the particularity requirement is not met in pleading fraud.

In the context of federal securities litigation, it has been held that Fed.R.Civ.P. 9(b) serves three important purposes:

1) [I]t ensures that allegations are specific enough to inform a defendant of the act of which the plaintiff complains, and to enable him to prepare a defense; 2) it eliminates those complaints filed as a pretext for the discovery of unknown wrongs—a 9(b) claimant must know what his claim is when he files; and 3) it seeks to protect defendants from unfounded charges of wrongdoing which injure their reputations and goodwill.

*Benoay, supra* at 492. These factors must be considered when examining a Fed.R.Civ.P. 9(b) motion in a securities case.

 After examination of Count I of the complaint, the Court finds that the requisite circumstances of federal securities fraud are not alleged with sufficient particularity. Count I does not identify those defendants with whom plaintiffs dealt, nor does it specify what false representations were made to the plaintiffs. The occasions on which false representations were made, including place and time, are also not designated. In fact, with only two exceptions, Count I refers to the "operating defendants" rather than identifying a specific defendant. Inasmuch as Count I does not distinguish between the various defendants, it fails to meet the particularity requirements of Fed.R.Civ.P. 9(b); it is imperative that each individual defendant be apprised separately of the specific acts of which he is accused. *Benoay, supra* at 493.

The two exceptions in Count I to the blanket use of "operating defendants" occur in paragraphs 34 and 35 when plaintiffs refer to "operating defendant Organ" and in paragraphs 39 and 40 when reference is made to defendant Schmaltz & Co. However, even though the specified defendants are named in those paragraphs, there is no indication of what, if any, false representations these defendants made to the plaintiffs. Additionally, the time and place of the alleged false representations are not supplied. Hence, these references to individual defendants also fail to meet Fed.R.Civ.P. 9(b)'s requirements. As Count I stands, it completely fails to meet Fed.R.Civ.P. 9(b)'s requirements. These conditions necessitate the dismissal of Count I for failure to plead fraud with particularity.

On perusal of Count V, it is apparent that count also fails to plead fraud with particularity. Plaintiffs fail to give the time, place, and content of the alleged misrepresentations. Instead, they have supplied vague, unspecific allegations. These allegations are insufficient for Fed.R.Civ.P. 9(b) purposes. There is also no allegation of intent to defraud. Accordingly, Count V also fails to pass muster under Fed.R.Civ.P. 9(b); this is an alternative reason for the Court's grant of summary judgment for defendant Schmaltz & Co. as to Count V.

 In the usual case, the Court would allow the plaintiffs to amend their complaint to attempt to state a securities fraud claim which complies with Fed.R.Civ.P. 9(b). But, in the instant case, the plaintiffs have never sought leave to amend even though various defendants have raised Fed.R.Civ.P. 9(b)'s particularity requirements as an issue throughout the nine years of this litigation. Plaintiffs' response to the present motion is to argue that the motion should have been brought earlier, rather than to seek amendment.[8]

---

**8.** Because it is clear that Fed.R.Civ.P. 9(b) motions may be brought even after significant time periods have passed since the filing of the complaint, *Benoay, supra,* the Court need not consider plaintiffs' argument that this motion should have been brought earlier. Additionally, the Court's review of the court file indicates that a Fed.R.Civ.P. 9(b) motion was brought earlier by defendant Michael Gleeson. That motion was apparently never ruled upon.

Further, discovery has been closed in this case for some years now, and all information which would allow plaintiffs to plead fraud with more particularity should have been available to them for some time now. Of note, all parties, including the plaintiffs, have repeatedly represented to the present judge that further discovery was not needed in this case. Additionally, no new defendants or new claims have been added to this case since its inception. Finally, the plaintiffs have been provided with numerous opportunities to seek amendment, should they have so desired. Most recently, the Court gave all parties an opportunity to file supplemental briefs in this case including any exhibits necessary to those briefs. Under these conditions, as well as in light of the extended period of time involved, the Court finds that allowing the plaintiffs to amend would be unwise. Accordingly, the Court shall dismiss the remainder of plaintiffs' securities fraud claim raised in Count I for failure to plead fraud with particularity.

Granting defendant's Fed.R.Civ.P. 9(b) motion means that the remainder of the securities fraud claims which have not been disposed of earlier must be dismissed with prejudice. *Benoay, supra* at 494. Therefore, the Court shall dismiss the remaining sec. 10(b) and Rule 10b–5 claims in Count I of the complaint with prejudice. After this dismissal, all federal claims raised in this case have been disposed of.

### H. State Claims

█ With dismissal of the federal claims and plaintiffs' concession to the dismissal of the Michigan Blue Sky claim in Count II, only the state law claims for fraudulent inducement, for violation of common law good faith and fair dealing, and for negligent mismanagement raised in Counts III, IV, and VI remain. As either summary judgment or dismissal has been granted as to all federal claims, the state claims must be dismissed as well. *United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966). Accordingly, the Court shall order the pendent state claims in Counts III, IV, and VI dismissed.

### I. Joinders

As stated at the outset of this opinion, defendant Michael Gleeson and defendants Charles K. Rogers, Lawrence Rogers, and Daniel Organ have separately joined in Schmaltz & Co.'s motion for summary judgment. Because the Court has determined that Schmaltz & Co.'s motion must be granted as to all federal claims raised in the complaint, including those brought against the individual defendants, summary judgment must be granted for the individual defendants as well. Additionally, the motions brought by defendant Gleeson and defendants Charles K. Rogers, Lawrence Rogers, and Paul Gusho make the same arguments, with some additional argument, as those presented by Schmaltz & Co. The Court shall consider defendants Charles K. Rogers, Daniel Organ, and Lawrence Rogers' resubmitted motion to dismiss as a motion for summary judgment in light of their joinder in Schmaltz & Co.'s motion. As plaintiffs fully responded to Schmaltz & Co.'s motion for summary judgment, supplying exhibits pertinent to that motion, this conversion shall not prejudice them. Since the arguments made in defendant Michael Gleeson's motion and defendants Charles K. Rogers, Daniel Organ, and Lawrence Rogers' motion are the same as those raised by defendant Schmaltz & Co., summary judgment shall be granted on these defendants' motions as well.

For the reasons set forth above,

IT IS HEREBY ORDERED that defendants Donald E. Schmaltz and Paul Gusho d/b/a Schmaltz & Co.'s renewed motion for summary judgment, joined by defendants Michael Gleeson and defendants Charles K. Rogers, Daniel Organ, and Lawrence Rogers, is GRANTED.

IT IS FURTHER ORDERED that defendant Michael Gleeson's renewed motion for summary judgment, joined by defendants Charles K. Rogers, Daniel Organ, and Lawrence Rogers, is GRANTED.

IT IS FURTHER ORDERED that defendants Charles K. Rogers, Daniel Organ,

and Lawrence Rogers' resubmitted motion to dismiss, joined by defendant Michael Gleeson, which the Court construes as a motion for summary judgment, is GRANTED.